## GUARANTY

THIS GUARANTY is made and granted this 27th day of April, 2004, by **CHANDAR RATNAM AND ASHA CHANDAR**, husband and wife (hereinafter referred to, collectively, even if only one, as the "Guarantors"), to and in favor of **H STREET COMMUNITY DEVELOPMENT CORPORATION, INC.**, a District of Columbia corporation ("Landlord").

W I T N E S S E T H :

WHEREAS, Landlord entered into a "Retail Lease Agreement" dated as of August 26, 2002 with 2001 B.A. Realty Inc., d.b.a. Blimpie, a New York corporation, as tenant ("Tenant") (the "Lease"), for certain premises having a street address of 777 H Street, N.E., Washington, D.C., 20002, containing approximately 1,798 square feet of space (the "Premises") in the one (1)-story retail building constructed and located at the intersection of 8th and H Streets, N.E. in the District of Columbia.

WHEREAS, Guarantors are the principal owners of Chan Foods, Inc. (the "Replacement Subtenant"), which is the proposed replacement franchisee of Tenant that will occupy and operate the Premises in accordance with the terms, conditions and provisions of the Lease.

WHEREAS, Guarantors desire to induce Landlord to approve Tenant's subletting of the Premises to the Replacement Tenant, but Landlord is willing to do so if and only if Guarantors guarantee to Landlord, under the following terms and conditions, the observance and performance of all of Tenant's obligations when and as due under the terms of the Lease.

NOW, THEREFORE, simultaneously with Landlord's execution and delivery of written approval of Tenant's subletting to the Replacement Tenant, and in consideration thereof, the Guarantors do hereby, jointly and severally, make the following covenants and agreements in favor of Landlord with respect to all present and future obligations of Tenant under the Lease:

1. Guarantors hereby, jointly and severally, absolutely, unconditionally and irrevocably guarantee to Landlord, without limit (a) the prompt and complete payment to Landlord of all Rent, when and as the same becomes due and payable under the terms of the Lease; (b) the prompt and complete observance and performance of all other obligations of Tenant under the Lease, when and as the same are to be observed or performed under the terms of the Lease; and (c) the prompt and complete payment to Landlord of all other damages, costs and expenses (including reasonable attorneys fees) that, by reason of the Lease, may become payable by Tenant to Landlord.

2. Guarantors' liability hereunder shall in no way be affected by (a) any waiver, release, indulgence, extension or forbearance that Landlord may hereafter grant to Tenant with respect to the observance or performance of any obligation of Tenant under this Lease; (b) any settlement between

1

Landlord and Tenant with respect to any rights or remedies Landlord may have against Tenant; (c) any waiver, release, indulgence, extension or forbearance that Landlord may hereafter grant to any one or more of the Guarantors individually (if more than one) with respect to any of that Guarantor's, or those Guarantors', obligations under this Guaranty; or (d) any settlement between Landlord and any one or more of the Guarantors individually (if more than one) with respect to any rights or remedies Landlord may have against such individual Guarantor(s) hereunder. Guarantors waive any requirement that Guarantors be notified of any such waiver, release, indulgence, extension, forbearance, or settlement.

3. In the event of any default in the observance or performance of any of Tenant's obligations under the Lease, Guarantors covenant and agree to perform such obligations forthwith upon Landlord's demand (in the same manner as if the same constituted the direct primary obligations and liabilities of Guarantors), including, without limitation, payments of all attorneys fees and other sums owing to Landlord by reason of such default.

4. The obligations of the Guarantors hereunder shall in no way be terminated, postponed or impaired by reason of any assertion by Landlord against Tenant of any rights or remedies Landlord may have.

5. Landlord may make demand upon, or institute legal proceedings against, Guarantors for the performance of any obligations of Tenant under the Lease, without first proceeding in any way against Tenant and without enforcing any rights or remedies Landlord may have under, or in connection with, the Lease.

6. Landlord and Tenant may, at any time and from time to time, without notice to, or consent by, the Guarantors, enter into such modifications, extensions, or amendments of the Lease, or other covenants respecting the Lease, as they deem appropriate. The Guarantors' liability hereunder shall not be released or impaired thereby; rather, the Guarantors shall continue to be fully liable, in the manner set forth in this Guaranty, for the payment, observance and performance of all obligations of Tenant under the Lease as thus modified, extended or amended.

7. Guarantors waive any and all rights they may otherwise have to receive notice of acceptance of this Guaranty, notice of failure or default in the observance or performance of any of Tenant's obligations under the Lease, and other notices that may be lawfully waived by Guarantors. No delay of Landlord in exercising any of its rights or remedies or under this Guaranty, or in taking any action to enforce the observance or performance of Tenant's obligations under the Lease, shall operate as a waiver of such rights or remedies or in any manner impair any of Landlord's rights or remedies against Guarantors hereunder.

8. In any action or proceeding brought by either the Landlord or the Guarantors against the other with respect to any matters whatsoever arising out of, under or by virtue of the Lease or this Guaranty, the Landlord and the Guarantors shall and do hereby waive trial by jury.

9. Neither the disaffirmance, discharge, postponement nor impairment of Tenant's liability or obligations under the Lease in any bankruptcy, insolvency, reorganization or similar proceeding, nor any resulting termination of this Lease, shall relieve the Guarantors of any of their liability under this Guaranty. Rather, such liability shall continue just as though the Lease had not been affected by such disaffirmance, discharge, postponement, impairment or termination.

10. The Guarantors agree to pay all reasonable attorneys' fees, court costs, expert witness fees and charges, and other expenses incurred by Landlord in connection with any action taken as a result of a breach of the Lease or this Guaranty.

11. If any term of this Guaranty is or becomes void, in whole or in part, for any reason whatsoever, then this Guaranty shall be valid and remain in full force and effect to the extent that it is not void.

12. All claims that Guarantors may have against Tenant, whether by way subrogation to any position of Landlord or for contribution or reimbursement or otherwise, shall be subordinate to any then outstanding claims that Landlord may then have against Tenant. Guarantors hereby release Landlord from any and all liability to Guarantors or to Tenant for failing to recognize, observe, or protect any legal or equitable right Guarantors may have with respect to Tenant, the Lease, or the Premises described in the Lease. No such failure on the part of Landlord shall relieve Guarantors of any of their liability under this Guaranty.

13. This Guaranty may not be modified, altered or terminated, except pursuant to an instrument in writing executed by Guarantors and consented to in writing by Landlord. No waiver of any term of this Guaranty shall be valid unless in writing and signed by Landlord. Any failure of Landlord to insist upon strict performance of any obligation or covenant of Guarantors under this Guaranty in any one or more instances shall not be construed as a waiver or relinquishment of (a) the right to insist upon strict performance of such obligation or covenant thereafter, (b) any other rights or remedies of Landlord, or (c) any other obligations or covenants of Guarantors.

14. This Guaranty shall be construed and enforced in accordance with the laws of the State in which the Premises described in the Lease are located, without reference to the choice of laws rules of that state.

15. This Guaranty shall be binding upon Guarantors, their heirs, executors, personal representatives, successors and assigns; and shall inure to the benefit of, and be enforceable by, Landlord, its successors and assigns, and by any successor to the interests of the Landlord under the Lease. However, the foregoing terms shall not be deemed to modify any provision of the Lease regarding assignments.

16. The terms defined in the Lease shall have the same respective meanings in this Guaranty.

17. Guarantor's obligations and liabilities under this Guaranty shall be construed in accordance with the principle that time is of the essence.

18. For the purposes of this Guaranty, Tenant's obligations under the Lease shall be deemed to include the acts or omissions of Tenant's employees, agents, contractors, subtenant, licensees, concessionaires, and invitees for which Tenant is liable under the terms of the Lease.

19. This Guaranty may be executed in several counterparts, in either original typed instruments or reproductions thereof, but all counterparts shall constitute one and the same instrument.

20. Any notice which Landlord may desire to give to Guarantors shall be deemed sufficiently given or rendered if in writing and either (a) delivered to Guarantors personally, or (b) deposited with the U.S. Postal Service (with first-class postage prepaid and sent by certified or registered mail, return receipt requested) or with a recognized overnight commercial courier service (such as Federal Express), and addressed to Guarantors at 14110 Gabrielle Way, Centreville, Virginia 20121, or at such other address as Guarantors may designate by written notice given to Landlord in the manner hereinafter provided. The time of the rendition or giving of such notice shall be deemed to be the time when the same is personally delivered, or one day after the same is deposited as aforesaid, as the case may be. However, in the event of an emergency, any notice by Landlord to Guarantors hereunder may be oral, delivered by telephone or telegraph, or delivered by hand as the exigencies of the particular situation may allow. Any notice by Guarantors to Landlord must be served by certified or registered mail return receipt requested, or by a recognized overnight commercial courier service, addressed to Landlord at the same address as is designated under the Lease from time to time for notices to Landlord, or at such other addresses as Landlord may designate by written notice given to Guarantors in the manner hereinbefore provided.

**[SIGNATURE PAGE AND ACKNOWLDEGEMENT FOLLOW]**

IN WITNESS WHEREOF, the Guarantors have executed and delivered this Guaranty under seal as of the date first written above.

**GUARANTORS**:

_____[SEAL]
Name: Chandar Ratnam

_____[SEAL]
Name: Asha Chandar

Husband and Wife

STATE OF Virginia_____, CITY/COUNTY OF Fairfax_____, TO WIT:

I HEREBY CERTIFY that on this 28 day of April, 2004, before me, the subscriber, a Notary Public of the State of ___VA___, in and for the City/County aforesaid, personally appeared Chandar Ratnam and Asha Chandar, husband and wife, and they acknowledged the foregoing document to be their act and deed.

WITNESS my hand and Notarial Seal.

My Commission Expires: 2/28/05

_____
Notary Public

5