IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Chandar Ratnam et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 1:06-cv-00372-JR** |
| ) | |
| **Blimpie Assoc. Ltd., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF
PLAINTIFFS' MOTION TO REMAND**

    Plaintiffs Chandar Ratnam, Asha Chandar and Chans Foods, Inc. (collectively "Chans Foods"), by and through its undersigned counsel, hereby moves this Court to reconsider its denial of Plaintiffs' motion to remand this case to Superior Court of the District of Columbia on the grounds that this Court lacks subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332. The grounds for this motion are more fully discussed in the attached Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of Plaintiffs' Motion to Remand.

    In accordance with Local Rule 7(m), the undersigned counsel states that he attempted to obtain Defendants' consent to this motion but was not successful in obtaining such consent.

1

|  |  |
|---|---|
| Dated: <u>July 13, 2006</u> | By: <u> /s/Joseph Horn</u><br>     Joseph Horn, Esq.<br>Attorney Bar No. 418448<br>Horn Legal, PLLC<br>1730 Rhode Island Avenue,<br>Suite 1208<br>Washington, D.C. 20036<br>202 321 0084<br>202 835 1557<br><br> - and –<br><br>Scott Korzenowski, Esq.<br>William S. Fulton, Jr., Esq.<br>4000 IDS Center<br>80 South Eighth Street<br>Minneapolis, Minnesota 55402<br>(612) 359-9000<br><br>**ATTORNEYS FOR PLAINTIFFS** |

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Chandar Ratnam, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 1:06-cv-00372-JR |
| ) | |
| **Blimpie Assoc. Ltd., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION OF MOTION TO REMAND

Plaintiffs Chandar Ratnam, Asha Chandar and Chans Foods, Inc. (collectively "Plaintiffs"), by and through its undersigned counsel, hereby set forth this Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of Motion to Remand.

**I.   Procedural History**

The pertinent procedural history for Plaintiffs' Motion for Reconsideration of Motion to Remand is summarized below:

- January 18, 2006.  Plaintiffs filed their Complaint in the Superior Court for the District of Columbia against all Defendants, alleging violations of the District of Columbia Consumer Protection Procedures Act, negligent and fraudulent misrepresentation, breach of contract and the covenant of good faith and fair dealing, and unjust enrichment.

- March 2, 2006.  Blimpie Associates, Ltd. ("Blimpie"), 2001 B.A. Realty, Inc., and D.C.B.G., Inc. (the "Removing Defendants") filed a Notice of Removal (the "Notice of Removal").

1

- <u>March 21, 2006.</u>  Defendant H Street Community Development Corporation ("HSCDC") filed a Motion to Remand, requesting this Court to remand this case to Superior Court.

- <u>April 3, 2006.</u>  Plaintiffs filed a Motion to Remand (the "Motion to Remand"), requesting this Court to remand this case to Superior Court.

- <u>April 4, 2006.</u>  Certain Defendants filed a Motion to Dismiss or Transfer Venue.

- <u>April 26, 2006.</u>  After a consolidated oral hearing, this Court denied all pending motions, including Plaintiffs' Motion to Remand.

## II.   Argument

The Removing Defendants argue this action was properly removed because this Court has subject matter jurisdiction over this action based on diversity.  In order for this Court to have subject matter jurisdiction over this matter based on diversity, <u>complete diversity</u> must exist between the parties, i.e., the "citizenship of each plaintiff is diverse from the citizenship of each defendant."  *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (U.S. 1996).  Currently, the parties in this action are not diverse, as follows:[1]

| Non-Diverse Plaintiffs | Non-Diverse Defendants |
|---|---|
| Asha Chandar – citizen of Virginia<br><br>Chandar Ratnam – citizen of Virginia | D.C.B.G., Inc. – citizen of Virginia |
| Chans Foods, Inc. – citizen of the District of Columbia | HSCDC – citizen of the District of Columbia. |

---

[1]   For purposes of sections 1332 and 1441 (i.e., the federal removal statute), a "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business…."  28 U.S.C. § 1332(c).

2

Because diversity jurisdiction does not currently exist, this Court currently lacks subject matter jurisdiction over this matter.

1. **The Standard for this Court to use when determining if Parties are Fraudulently Joined.**

The Removing Defendants have argued that complete diversity exists because Plaintiffs "fraudulently joined" three parties (Plaintiffs Asha Chandar and Chandar Ratnam and Defendant HSCDC) and therefore these three parties should not be considered for purposes of determining diversity jurisdiction. See Notice of Removal, ¶ 10.

In order for complete diversity to exist in this case, the Removing Defendants must succeed in showing that all three parties (i.e., Plaintiffs Asha Chandar and Chandar Ratnam, and Defendant HSCDC) were fraudulently joined. The failure to demonstrate that any of these three parties were fraudulently joined will destroy diversity and divest this Court of subject matter jurisdiction.

To demonstrate fraudulent joinder, Removing Defendants must show that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the … defendant into state court." *In re Tobacco/Governmental Health Care Costs Litigation*, 100 F.Supp.2d 31, 40 (D.D.C. 2000) (emphasis added). *See also, Chicago, R.I. & P. Ry. Co. v. Whiteaker*, 239 U.S. 421 (U.S. 1915) (stating that to demonstrate fraudulent joinder, a defendant must demonstrate that joinder was "without right and made in bad faith."); *Everett v. MTD Products, Inc.*, 947 F. Supp. 441, 444-45 (N.D. Ala.1996) ("A defendant has a high burden in establishing fraudulent joinder--it must present evidence that compels the conclusion that the joinder is without right and made in bad faith. A defendant must assert with particularity that a joinder is fraudulent and support the claim by clear and convincing evidence.")

Moreover, when determining whether a party has been fraudulently joined, this Court must apply a standard that heavily favors Plaintiffs: "the district court must <u>evaluate factual allegations in the light most favorable to the plaintiff</u> and <u>resolve any uncertainties about the applicable law in plaintiff's favor</u>." *Id.* (emphasis added).

**2. Asha Chandar and Chandar Ratnam Have Stated Claims For Fraudulent/Negligent Misrepresentation Against HSCDC and Blimpie.**

Removing Defendants argue that the Plaintiffs Asha Chandar and Chandar Ratnam (the "Individual Plaintiffs") were fraudulently joined because there is "no possibility" that the Individual Plaintiffs have a cause of action against any Defendant. This is incorrect; these Plaintiffs have properly stated claims against certain Defendants based on fraudulent and negligent misrepresentation.

First, the Individual Plaintiffs are in contractual privity with both HSCDC and Blimpie, and have stated claims against both of these Defendants for fraudulent and negligent inducement of contracts. Complaint, ¶¶ 59 - 68. Both HSCDC and Blimpie required the Individual Plaintiffs to sign personal guarantees, guaranteeing the performance of both the Sublease between Chans Foods, Inc. and HSCDC (the "Guaranty") and the Franchise Agreement between Chans Foods, Inc. and Blimpie. Complaint, ¶ 31; Affidavit of William S. Fulton, Jr. ("Affidavit"), ¶¶ 3 and 4 (attached hereto as Exhibit A).[2] A personal guarantee is a contract, and the misrepresentation or omission of material facts to induce a party to sign a guarantee can constitute fraud in the inducement. *See, e.g., U.S. v. Burgreen*, 591 F.2d 291, 296 (5th Cir. 1979) (recognizing that a guarantee agreement can be fraudulently induced); *Dobbins v. Dicus Oil Co., Inc.*, 495 So.2d

---

[2] The Complaint does not expressly state that the Individual Plaintiffs signed a guarantee with Blimpie. However, the Individual Plaintiffs did sign a guarantee in favor of Blimpie at the time of executing the Franchise Agreement, which was a part of the purchase of a franchise from Blimpie. Complaint, ¶ 31; Affidavit, ¶ 4.

4

587, 589 (Ala. 1986)(same); *Helmick v. Holaday*, 289 P. 224 (Cal. App. 1930)(same); *Doerr v. Hibben, Hollweg & Co.*, 150 N.E. 795, 796 (Ind. App. 1926) ("It has many times been held, and is a well-settled rule of law, that a contract of guarantee cannot be enforced by the guarantee, where the guarantor has been induced to enter into the contract by fraudulent misrepresentations or concealment on the part of the guarantee.") (citations omitted); *Peoples State Bank v. Hill*, 275 S.W. 694, 697 (Ky. App. 1925) (same); *First Nat. Bank of Boston v. Bergreen*, 417 N.E.2d 50, 51 (Mass. App. 1981) (same); *Henry v. W.T. Rawleigh Co.,* 120 So. 188, 189 (Miss. 1929) (same); *General Motors Acceptance Corp. v. Kalkstein*, 474 N.Y.S.2d 493, 495 (N.Y. App. Div. 1984) (same); *Northwestern Bank v. Roseman*, 344 S.E.2d 120, 123 (N.C. App. 1986) (same); *Security Nat'l. Bank v. Sloan,* 648 P.2d 861, 864 (Or. App. 1982) (same); *Hernandez v. Bexar County Nat. Bank of San Antonio,* 710 S.W.2d 684, 688 (Tex. App. [Corpus Christi] 1986) (same).

Plaintiffs have alleged facts that show that both HSCDC and Blimpie omitted material facts about the property that was to be used for a Blimpie fast food franchise; these allegations are sufficient to support claims against both HSCDC and Blimpie for fraudulent inducement. Complaint, ¶¶18-21, 33. *Howard v. Riggs Nat'l Bank,* 432 A.2d 701, 706 (D.C. App. 1981) (omission of material facts can constitute fraud). The omission of material facts can also constitute negligent misrepresentation. *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999).

As stated above, the standard to be used by this Court is to "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Applying this standard, and based on these claims alone, the Removing Defendants cannot demonstrate that these Plaintiffs were fraudulently joined, i.e., the Removing

5

Defendants cannot demonstrate that these Plaintiffs have "no possibility" of stating a claim against Defendants based on fraudulent and/or negligent misrepresentation. Because these Plaintiffs were not fraudulently joined, their citizenship must be considered by this Court, and their presence alone destroys diversity. Therefore, this Court lacks subject matter jurisdiction over this action.

Moreover, based on the Guaranty and Plaintiffs' allegations that HSCDC omitted material facts, Removing Defendants are unable to show that HSCDC was fraudulently joined. That is, applying the standard to be used ("evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor"), the Removing Defendants cannot demonstrate that the Individual Plaintiffs have "no possibility" of stating a claim against HSCDC. Accordingly, the citizenship of HSCDC must also be considered by this Court when determining whether diversity exists.

Because of the personal guarantees signed by Plaintiffs Asha Chandar and Chandar Ratnam in favor of HSCDC and Blimpie, and after applying the proper standard in determining the existence of fraudulent joinder, this Court is compelled to find that Removing Defendants cannot meet their high burden to show that the parties were fraudulently joined. Because the presence of these three parties destroys diversity, this Court lacks subject matter jurisdiction and therefore must remand this case. For these reasons, Plaintiffs request this Court to reconsider and grant Plaintiffs' Motion to Remand this matter.

**3. Plaintiffs Have Stated Claims For Violation of the Consumer Protection Procedures Act Against Defendant HSCDC.**

Plaintiffs have also stated claims against Defendants (including HSCDC) based on violation of the Consumer Protection Procedures Act of the District of Columbia, D.C. Code Ann. §§ 28-3901 et seq. (the "Act"). As argued above, Plaintiffs do not have to establish that

6

HSCDC violated the Act to divest this Court of subject matter jurisdiction. However, applying the standard to be used by this Court ("resolve any uncertainties about the applicable law in plaintiff's favor"), this Court is also compelled to find that the Removing Defendants cannot meet the high standard required to demonstrate that Plaintiffs' claims against HSCDC based on violation of the Act were "fraudulently joined." Moreover, this Court is compelled to find that the Plaintiffs are "consumers," and HSCDC was a "merchant" that engaged in unlawful "trade practices" that violated the Act. *Independent Communications Network, Inc. v. MCI Telecommunications Corp.,* 657 F.Supp. 785, 787 (D. D.C.1987) ("In short, the [Act] supplies consumers with a private cause of action against merchants.").

### (a) Plaintiffs are Consumers under the Act

The Act defines the term "consumer" as follows:

> "[C]onsumer" means a person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, "consumer" describes anything, without exception, <u>which is primarily for personal, household, or family use.</u>

D.C. Code Ann., § 28-3901(2) (emphasis added).[3]

Removing Defendants have argued that, because the transactions at issue are not for "household" use, Plaintiffs are not "consumers" under the Act.[4] This is an incorrect construction. The Act expressly does not does not require that a "consumer" transaction be for

---

[3] The term "person" is also defined broadly, to mean "an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized." D.C. Code Ann., § 28-3901(1).

[4] The transactions referred to are: (1) Plaintiffs purchase of a Blimpie Franchise Agreement; (2) Plaintiffs execution of a Sublease with Defendant 2001 BA Realty; and (3) Plaintiffs' provision of guarantees to Defendants HSCDC and Blimpie.

7

"household" use. Rather, the transaction can merely be for "personal" use. D.C. Code Ann., § 28-3901(2).

Courts construing this provision are in agreement; in fact, the most recent interpretation by a District of Columbia Court of the term "consumer" concludes that "household" use <u>is not</u> required. All that is required to be a "consumer" under the Act is that the transaction must involve the final retail market.

> Transactions along the distribution chain that do not involve the ultimate retail customer are not "consumer transactions" that the Act seeks to reach. <u>Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers.</u> Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction. If the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public, then a transaction in the course of that business is not within the Act. <u>If, on the other hand, the purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will usually fall within the Act.</u>

*Adam A. Weschler & Son, Inc. v. Klank,* 561 A.2d 1003, (D.C. 1989) (emphasis added).

In this case, Plaintiffs were retail purchasers; prior to their purchase of the Blimpie franchise, Plaintiffs had never before purchased a franchise, let alone regularly purchased franchises for eventual re-sale. Complaint, ¶ 24. Accordingly, Plaintiffs are "consumers" under the definition established by the District of Columbia court in *Klank*.

### (b) **HSCDC is a Merchant under the Act**

As stated above, the Act protects "consumers" from unlawful trade practices committed by "merchants." Like the term "consumer," the term "merchant" is also very broad under the Act.

8

> "[M]erchant" means a person who does or would sell, lease (to), or transfer, <u>either directly or indirectly,</u> consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice;

D.C. Code Ann., § 28-3901(3) (emphasis added).

Legislative history and case law both demonstrate that the term "merchant" was intended to be broad, and includes HSCDC (as well as the other Defendants) within its scope. "[M]erchant is a person on the "supply" side of a consumer transaction." Committee Report, Bill 1-253, March 24, 1976, p.13 (a true and correct copy of the Committee Report is attached hereto as Exhibit B); *see also, Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C. 1981) (holding that the term "merchant" in the Act was not limited to the actual seller, but included those connected with the "supply" side of a consumer transaction).

Here, there is no question that HSCDC is on the supply side of the consumer transactions that form the basis of this dispute – HSCDC owns and leased the property that Plaintiffs subleased. Complaint, ¶¶ 16-23. HSCDC also required the Guaranty prior to agreeing to the Sublease. Complaint, ¶ 31. Accordingly, HSCDC was on the "supply" side of the transactions, and is a "merchant" under the Act.

### (c) <u>HSCDC Engaged in Trade Practices for Good and Services</u>

The Act defines the term "trade practice" very broadly, expressly including leases, as follows:

> "Trade practice" means any act which does or would create, alter, repair, furnish, make available, provide information about, or, <u>directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services;</u>

D.C. Code Ann., § 28-3901(6) (emphasis added).

Moreover, the Act expressly includes within its definition of "goods and services" both the sale of franchises and real estate transactions.

9

> "Goods and services" means any and all parts of the economic output of society, at any stage related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types.

D.C. Code Ann., § 28-3901(7) (emphasis added).

The legislative history of the Act clarifies the broad scope that should be given to these terms.

> * * *
> 6. "trade practice" is any economic act between a consumer and a merchant.
> 7. "goods and services" are the subject matter of any trade practice, including any action normally considered only incidental to the supply of goods and services to consumers....

Committee Report, Bill 1-253, March 12, 1976, p.14 (emphasis added).

As stated above, Plaintiffs are in direct privity with HSCDC by the Guaranty, signed by the Individual Plaintiffs in favor of HSCDC. The Guaranty was meant to "effectuate" the Sublease of the property to Plaintiffs.

> * * *
> WHEREAS, Guarantors are the principal owners of Chan Foods, Inc. (the "Replacement Subtenant"), which is the proposed replacement franchisee of Tenant that will occupy and operate the Premises in accordance with the terms, conditions and provisions of the Lease.
>
> WHEREAS, the Guarantors desire to induce Landlord to approve Tenant's subletting of the Premises to the Replacement Tenant, but Landlord is willing to do so if and only if Guarantors guarantee to Landlord, under the following terms and conditions, the observance and performance of all Tenant's obligations when and as due under the terms of the Lease....

Guaranty, Exhibit 1 to Affidavit (emphasis added).

Requiring and accepting the Guaranty effectuated the Sublease and constitutes a "trade practice" under the Act. In addition, HSCDC owns and leased the property that Plaintiffs later subleased; thus, HSCDC indirectly leased the property to Plaintiffs. Complaint, ¶¶ 16-23. For

10

these reasons, HSCDC engaged in "trade practices" that provided Plaintiffs "goods and services," as those terms are defined under the Act.

### (d) HSCDC violated the Act.

The Act prohibits unlawful trade practices between consumers and merchants, *Independent Communications Network, Inc. v. MCI Telecommunications Corp.,* 657 F.Supp. 785, 787 (D.D.C. 1987), and contains a nonexclusive list of unlawful trade practices, including the following:

> It shall be a violation of this chapter, whether or not any consumers are in fact misled, deceived or damaged thereby, for any person to:
>
> \* \* \*
> (f) Fail to state a material fact if such failure tends to mislead....

D.C. Code Ann., § 28-3904(f).

Plaintiffs have alleged that HSCDC violated the Act by failing to inform Plaintffs that the property that Plaintiffs subleased for use as a fast food restaurant was not zoned for use as a fast food restaurant, and that there was strong, local opposition to its use as a fast food restaurant. Complaint, ¶¶ 21, 33. Accordingly, Plaintiffs have alleged facts that constitute a violation of the Act by HSCDC.

Applying the standard that this Court must employ for the purpose of determining fraudulent joinder ("resolve any uncertainties about the applicable law in plaintiff's favor") this Court is compelled to find that the Plaintiffs are "consumers," and HSCDC was a "merchant" that engaged in unlawful "trade practices" that violated the Act. Accordingly, the Removing Defendants are unable to show that HSCDC was "fraudulently joined," and, therefore, this Court must consider HSCDC's citizenship in determining diversity. Because the presence of HSCDC alone destroys complete diversity, this Court lacks subject matter jurisdiction and must remand

this case.  For these reasons, we request that this Court reconsider and grant Plaintiffs' Motion to Remand.

### III. <u>Conclusion</u>

Based upon the foregoing arguments and authorities, Plaintiffs request this Court reconsider and grant Plaintiffs' Motion to Remand.

Dated: <u>July 13, 2006</u>     By:  <u>/s/Joseph Horn</u>
    Joseph Horn, Esq.
Attorney Bar No. 418448
Horn Legal, PLLC
1730 Rhode Island Avenue,
Suite 1208
Washington, D.C. 20036
202 321 0084
202 835 1557

- and –

Scott Korzenowski, Esq.
William S. Fulton, Jr., Esq.
4000 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 359-9000

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

On July 13, 2006, I, Joseph Horn, hereby certify that a true copy of the above Plaintiffs' Motion for Reconsideration of Plaintiffs' Motion to Remand and its supporting Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of Motion to Remand were electronically filed with this Court.

On July 13, 2006, I caused to be served a hard-copy by First-Class U.S. Mail, postage prepaid, to the following:

>Tarrant Hale Lomax
>1819 Bay Ridge Avenue
>Suite 220
>Annapolis, MD 21403
>(202) 253-8923
>Fax: (202) 686-0896
>
>Arthur L. Pressman
>NIXON PEABODY LLP
>100 Summer Street
>Boxton, MA 02110
>
>Kathrin V. Smith
>NIXON PEABODY, LLP
>401 Ninth Street, NW
>Suite 900
>Washington, DC 20004

>By: _/s/Joseph Horn_____
>     Joseph Horn, Esq.