IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Chandar Ratnam et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 1:06-cv-00372-JR |
| v. ) | |
| ) | |
| Blimpie Assoc. Ltd., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

AFFIDAVIT OF WILLIAM S. FULTON, JR

STATE OF MINNESOTA   )
                     )ss.
COUNTY OF HENNEPIN   )

**William S. Fulton, Jr.**, being first duly sworn, upon oath states and alleges as follows:

1. I am an attorney with Dady & Garner, P.A., counsel for Chandar Ratnam, Asha Chandar and Chans Foods, Inc. (collectively "Plaintiffs") in the above-entitled litigation.

2. I am submitting this Affidavit in support of Plaintiffs' Motion to Reconsider Plaintiffs' Motion to Remand in this matter.

3. Please find attached a true and correct copy of the April 28, 2004 Guaranty by Asha Chandar and Chandar Ratnam to and in favor of H Street Community Development Corporation, Inc., incorporated herein as Exhibit 1.

4. Please find attached a true and correct copy of the April 28, 2004 Guaranty from Asha Chandar and Chandar Ratnam to and in favor of Blimpie Associates, Ltd., incorporated herein as Exhibit 2.



FURTHER, AFFIANT SAITH NOT.

_____
William S. Fulton, Jr.

Subscribed and sworn to before me
this 29th day of June, 2006.

_____
Notary Public



PATRICIA I. GITS
Notary Public - Minnesota
My Commission Expires Jan 31, 2010

## GUARANTY

THIS GUARANTY is made and granted this 27th day of April, 2004, by **CHANDAR RATNAM AND ASHA CHANDAR**, husband and wife (hereinafter referred to, collectively, even if only one, as the "Guarantors"), to and in favor of **H STREET COMMUNITY DEVELOPMENT CORPORATION, INC.**, a District of Columbia corporation ("Landlord").

### W I T N E S S E T H:

WHEREAS, Landlord entered into a "Retail Lease Agreement" dated as of August 26, 2002 with 2001 B.A. Realty Inc., d.b.a. Blimpie, a New York corporation, as tenant ("Tenant") (the "Lease"), for certain premises having a street address of 777 H Street, N.E., Washington, D.C., 20002, containing approximately 1,798 square feet of space (the "Premises") in the one (1)-story retail building constructed and located at the intersection of 8th and H Streets, N.E. in the District of Columbia.

WHEREAS, Guarantors are the principal owners of Chan Foods, Inc. (the "Replacement Subtenant"), which is the proposed replacement franchisee of Tenant that will occupy and operate the Premises in accordance with the terms, conditions and provisions of the Lease.

WHEREAS, Guarantors desire to induce Landlord to approve Tenant's subletting of the Premises to the Replacement Tenant, but Landlord is willing to do so if and only if Guarantors guarantee to Landlord, under the following terms and conditions, the observance and performance of all of Tenant's obligations when and as due under the terms of the Lease.

NOW, THEREFORE, simultaneously with Landlord's execution and delivery of written approval of Tenant's subletting to the Replacement Tenant, and in consideration thereof, the Guarantors do hereby, jointly and severally, make the following covenants and agreements in favor of Landlord with respect to all present and future obligations of Tenant under the Lease:

1. Guarantors hereby, jointly and severally, absolutely, unconditionally and irrevocably guarantee to Landlord, without limit (a) the prompt and complete payment to Landlord of all Rent, when and as the same becomes due and payable under the terms of the Lease; (b) the prompt and complete observance and performance of all other obligations of Tenant under the Lease, when and as the same are to be observed or performed under the terms of the Lease; and (c) the prompt and complete payment to Landlord of all other damages, costs and expenses (including reasonable attorneys fees) that, by reason of the Lease, may become payable by Tenant to Landlord.

2. Guarantors' liability hereunder shall in no way be affected by (a) any waiver, release, indulgence, extension or forbearance that Landlord may hereafter grant to Tenant with respect to the observance or performance of any obligation of Tenant under this Lease; (b) any settlement between



1

Landlord and Tenant with respect to any rights or remedies Landlord may have against Tenant; (c) any waiver, release, indulgence, extension or forbearance that Landlord may hereafter grant to any one or more of the Guarantors individually (if more than one) with respect to any of that Guarantor's, or those Guarantors', obligations under this Guaranty; or (d) any settlement between Landlord and any one or more of the Guarantors individually (if more than one) with respect to any rights or remedies Landlord may have against such individual Guarantor(s) hereunder. Guarantors waive any requirement that Guarantors be notified of any such waiver, release, indulgence, extension, forbearance, or settlement.

3. In the event of any default in the observance or performance of any of Tenant's obligations under the Lease, Guarantors covenant and agree to perform such obligations forthwith upon Landlord's demand (in the same manner as if the same constituted the direct primary obligations and liabilities of Guarantors), including, without limitation, payments of all attorneys fees and other sums owing to Landlord by reason of such default.

4. The obligations of the Guarantors hereunder shall in no way be terminated, postponed or impaired by reason of any assertion by Landlord against Tenant of any rights or remedies Landlord may have.

5. Landlord may make demand upon, or institute legal proceedings against, Guarantors for the performance of any obligations of Tenant under the Lease, without first proceeding in any way against Tenant and without enforcing any rights or remedies Landlord may have under, or in connection with, the Lease.

6. Landlord and Tenant may, at any time and from time to time, without notice to, or consent by, the Guarantors, enter into such modifications, extensions, or amendments of the Lease, or other covenants respecting the Lease, as they deem appropriate. The Guarantors' liability hereunder shall not be released or impaired thereby; rather, the Guarantors shall continue to be fully liable, in the manner set forth in this Guaranty, for the payment, observance and performance of all obligations of Tenant under the Lease as thus modified, extended or amended.

7. Guarantors waive any and all rights they may otherwise have to receive notice of acceptance of this Guaranty, notice of failure or default in the observance or performance of any of Tenant's obligations under the Lease, and other notices that may be lawfully waived by Guarantors. No delay of Landlord in exercising any of its rights or remedies or under this Guaranty, or in taking any action to enforce the observance or performance of Tenant's obligations under the Lease, shall operate as a waiver of such rights or remedies or in any manner impair any of Landlord's rights or remedies against Guarantors hereunder.

8. In any action or proceeding brought by either the Landlord or the Guarantors against the other with respect to any matters whatsoever arising out of, under or by virtue of the Lease or this Guaranty, the Landlord and the Guarantors shall and do hereby waive trial by jury.

9. Neither the disaffirmance, discharge, postponement nor impairment of Tenant's liability or obligations under the Lease in any bankruptcy, insolvency, reorganization or similar proceeding, nor any resulting termination of this Lease, shall relieve the Guarantors of any of their liability under this Guaranty. Rather, such liability shall continue just as though the Lease had not been affected by such disaffirmance, discharge, postponement, impairment or termination.

10. The Guarantors agree to pay all reasonable attorneys' fees, court costs, expert witness fees and charges, and other expenses incurred by Landlord in connection with any action taken as a result of a breach of the Lease or this Guaranty.

11. If any term of this Guaranty is or becomes void, in whole or in part, for any reason whatsoever, then this Guaranty shall be valid and remain in full force and effect to the extent that it is not void.

12. All claims that Guarantors may have against Tenant, whether by way subrogation to any position of Landlord or for contribution or reimbursement or otherwise, shall be subordinate to any then outstanding claims that Landlord may then have against Tenant. Guarantors hereby release Landlord from any and all liability to Guarantors or to Tenant for failing to recognize, observe, or protect any legal or equitable right Guarantors may have with respect to Tenant, the Lease, or the Premises described in the Lease. No such failure on the part of Landlord shall relieve Guarantors of any of their liability under this Guaranty.

13. This Guaranty may not be modified, altered or terminated, except pursuant to an instrument in writing executed by Guarantors and consented to in writing by Landlord. No waiver of any term of this Guaranty shall be valid unless in writing and signed by Landlord. Any failure of Landlord to insist upon strict performance of any obligation or covenant of Guarantors under this Guaranty in any one or more instances shall not be construed as a waiver or relinquishment of (a) the right to insist upon strict performance of such obligation or covenant thereafter, (b) any other rights or remedies of Landlord, or (c) any other obligations or covenants of Guarantors.

14. This Guaranty shall be construed and enforced in accordance with the laws of the State in which the Premises described in the Lease are located, without reference to the choice of laws rules of that state.

15. This Guaranty shall be binding upon Guarantors, their heirs, executors, personal representatives, successors and assigns; and shall inure to the benefit of, and be enforceable by, Landlord, its successors and assigns, and by any successor to the interests of the Landlord under the Lease. However, the foregoing terms shall not be deemed to modify any provision of the Lease regarding assignments.

16. The terms defined in the Lease shall have the same respective meanings in this Guaranty.

17. Guarantor's obligations and liabilities under this Guaranty shall be construed in accordance with the principle that time is of the essence.

18. For the purposes of this Guaranty, Tenant's obligations under the Lease shall be deemed to include the acts or omissions of Tenant's employees, agents, contractors, subtenant, licensees, concessionaires, and invitees for which Tenant is liable under the terms of the Lease.

19. This Guaranty may be executed in several counterparts, in either original typed instruments or reproductions thereof, but all counterparts shall constitute one and the same instrument.

20. Any notice which Landlord may desire to give to Guarantors shall be deemed sufficiently given or rendered if in writing and either (a) delivered to Guarantors personally, or (b) deposited with the U.S. Postal Service (with first-class postage prepaid and sent by certified or registered mail, return receipt requested) or with a recognized overnight commercial courier service (such as Federal Express), and addressed to Guarantors at 14110 Gabrielle Way, Centreville, Virginia 20121, or at such other address as Guarantors may designate by written notice given to Landlord in the manner hereinafter provided. The time of the rendition or giving of such notice shall be deemed to be the time when the same is personally delivered, or one day after the same is deposited as aforesaid, as the case may be. However, in the event of an emergency, any notice by Landlord to Guarantors hereunder may be oral, delivered by telephone or telegraph, or delivered by hand as the exigencies of the particular situation may allow. Any notice by Guarantors to Landlord must be served by certified or registered mail return receipt requested, or by a recognized overnight commercial courier service, addressed to Landlord at the same address as is designated under the Lease from time to time for notices to Landlord, or at such other addresses as Landlord may designate by written notice given to Guarantors in the manner hereinbefore provided.

**[SIGNATURE PAGE AND ACKNOWLDEGEMENT FOLLOW]**

IN WITNESS WHEREOF, the Guarantors have executed and delivered this Guaranty under seal as of the date first written above.

**GUARANTORS**:

_____ [SEAL]
Name: Chandar Ratnam

_____ [SEAL]
Name: Asha Chandar

Husband and Wife

STATE OF Virginia, CITY/COUNTY OF Fairfax, TO WIT:

I HEREBY CERTIFY that on this 28 day of April, 2004, before me, the subscriber, a Notary Public of the State of VA, in and for the City/County aforesaid, personally appeared Chandar Ratnam and Asha Chandar, husband and wife, and they acknowledged the foregoing document to be their act and deed.

WITNESS my hand and Notarial Seal.

My Commission Expires: 2/28/05

_____
Notary Public

5

## GUARANTY

As an inducement to Blimpie Associates, Ltd. ("we", "our" or "us") to execute that certain Franchise Agreement (including any future amendments thereto) with **CHANS FOODS INC.** ("Franchisee") dated as of April 28, 2004, a copy of which is attached hereto, (the "Franchise Agreement"), each of the undersigned for themselves, their heirs, successors, and assigns, do jointly and severally, hereby absolutely and unconditionally warrant to us and our successors and assigns that all representations of Franchisee contained in both the Franchise Agreement and the application submitted in connection therewith are true and correct. The undersigned also jointly and severally agree to be personally bound by each and every covenant, term, condition, agreement and undertaking (including, without limitation, the timely payment and performance of all of Franchisee's obligations under the Franchise Agreement), coordinated and set forth in the Franchise Agreement, and the full and prompt payment of any amounts, costs, expenses, claims, charges or liabilities incurred by us under the Franchise Agreement or this Guaranty, including attorneys' fees and costs, related to the making, performance, or enforcement of the Franchise Agreement or this Guaranty, and agree that this Guaranty shall be construed as though the undersigned and each of them executed agreement(s) containing the judicial terms and conditions of the Franchise Agreement.

If more than one person has executed this Guaranty, the term "the undersigned" as used herein, shall refer to each such person, and the liability of each of the undersigned hereunder shall be joint and several and primary as sureties.

The undersigned hereby agree that without the consent of or notice to any of the undersigned and without affecting any of the obligations of the undersigned hereunder: (a) any term, covenant or condition of the Franchise Agreement may be amended, compromised, related or otherwise altered by us and the Franchisee, and the undersigned do guarantee and promise to perform all the obligations of the Franchisee under the Franchise Agreement as so amended, compromised, released or altered; (b) any guarantor of or party to the Franchise Agreement may be released, substituted or added; (c) any right to remedy under the Franchise Agreement, this Guaranty or any other instrument or agreement between us and the Franchisee may be exercised, not exercised, impaired modified, limited, destroyed or suspended; and (d) we or any other person may deal in any manner with the Franchisee, any of the undersigned, any party to the Franchise Agreement or ay other person.

Should Franchisee be in breach or default under the Franchise Agreement, we may proceed directly against any or each of the undersigned without first proceeding against or notifying the Franchisee and without proceeding against any others of the undersigned. Upon notice from us that Franchisee has failed to pay monies due and owing to us under the Franchise Agreement, any and each of the undersigned agree to cure any monetary default within five (5) business days from such notice.

Notice to and demand upon Franchisee or any of the undersigned shall be deemed notice to or demand upon Franchisee and all of the undersigned, and no notice or demand need be made to or upon any or all of the undersigned. The cessation of or release from liability of Franchisee or any of the undersigned shall not relieve any other of the undersigned from liability hereunder

**EXHIBIT 2**

or under the Franchise Agreement, except to the extent that the breach or default has been remedied or monies owed have been paid.

Upon the death of an undersigned the estate of such undersigned shall be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death. The obligations of the surviving undersigned shall continue in full force and effect.

This Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the undersigned specifically waives any obligation we may have to proceed against the Franchisee on any money or property held by the Franchisee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment or any of the guaranteed obligations is rescinded or must otherwise be restored or returned by us upon the insolvency, bankruptcy or reorganization of the Franchisee or any of the undersigned, all as though such payment has not been made.

The undersigned expressly acknowledge that the obligations hereunder survive the termination of the Franchise Agreement.

Any waiver, extension of time or other indulgence granted by us or our agents, successors or assigns, with respect to the Franchise Agreement shall in no way modify or amend this Guaranty which shall be continuing, absolute, unconditional and irrevocable. This Guaranty may be assigned by us voluntarily or by operation of law without reducing or modifying the liability of the undersigned hereunder.

Our failure to enforce all or any portion of our rights under this Guaranty shall not constitute a waiver of our ability to do so at any point in the future.

Any litigation initiated under this Guaranty may be instituted exclusively at our discretion in the U.S. District Court for the Southern District of New York or in the Supreme Court of the State of New York, County of New York. The undersigned expressly agree that they are subject to the jurisdiction and venue of those courts for purposes of such litigation. The undersigned hereby waive and covenant never to assert any claim that they are not subject to personal jurisdiction in those courts or that venue in those courts is for any reason improper, inconvenient, prejudicial or otherwise inappropriate (including, without limitation, any claim under the judicial doctrine of forum non conveniens).

This Guaranty is to be exclusively construed in accordance with and/or governed by the law of the State of New York without recourse to New York (or any other) choice of law or conflicts of law principles. If, however, any provision of this Guaranty would not be enforceable under the laws of New York and if the business franchised under the Franchise Agreement is located outside of New York and the provision would be enforceable under the laws of the state in which the franchised business is located, then the provision (and only that provision) will be interpreted and construed under the laws of that state. Nothing in this Guaranty is intended to invoke the application of any franchise, business opportunity, antitrust, implied covenant, unfair competition, fiduciary or other doctrine of law of the State of New York or any other state, which would not otherwise apply.

If we choose to proceed against the undersigned under this Guaranty, and we prevail, the undersigned shall reimburse us our costs and expenses associated with the litigation, including or reasonable attorneys' fees, court costs and expenses.

The undersigned hereby specifically waives, presentment, notice, notice of protest, demand, notice of dishonor, and notice of default with respect to any obligation set forth in the Franchise Agreement or this Guaranty.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Guaranty as of the date of the Franchise Agreement.

Witness: _____

Guarantor: _____
**CHANDAR RATNAM**

Address:    14110 Gabrielle Way
            Centreville, VA 20121

Telephone No.: (703) 830-4952
Social Security No.: 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