## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CHANDAR RATNAM, ASHA CHANDAR,
and CHANS FOODS, INC.,

                Plaintiffs,

v.                                                                              CIVIL ACTION NO. 1:06-cv-00372-JR

BLIMPIE ASSOCIATES, LTD., 2001 B.A.
REALTY, INC., D.C.B.G., INC., and H
STREET COMMUNITY DEVELOPMENT
CORPORATION, INC.,

                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF BLIMPIE ASSOCIATES, LTD. AND 2001 B.A. REALTY, INC.'S MOTION FOR SUMMARY JUDGMENT

Blimpie Associates, Ltd. ("Blimpie Associates") and 2001 B.A. Realty, Inc. (together,

"Blimpie") file this Memorandum in support of their Motion for Summary Judgment.[1]  The

undisputed facts show that plaintiffs' claims against Blimpie must be dismissed because the

purchase of a business franchise does not constitute a "consumer" transaction under the District

of Columbia Consumer Protection Procedures Act and because Blimpie had no duty to tell

plaintiffs about zoning issues which were matters of public record.  Indeed, the undisputed facts

---

[1]      As set forth, infra, plaintiff Chans Foods, Inc. is the only plaintiff with standing to assert any claims against any defendant.  Moreover, when Blimpie removed this action from the DC Superior Court, claims of and against the fraudulently joined non-diverse parties (Ratnam, Chandar and H Street) were properly subject to dismissal.  See Covington v. Indemnity Ins. Co. of N. Am., 251 F.2d 930, 934 (5th Cir. 1958) (affirming trial court's sua sponte dismissal of defendant fraudulently joined to defeat diversity jurisdiction); Lawrence Builders, Inc. v. Kolodner, 414 F. Supp. 2d 134, 138 (D.R.I. 2006) (dismissing fraudulently joined parties pursuant to Fed. R. Civ. P. 21 and inherent power of court); Cary v. Board of Governors of the Kernwood Country Club, 337 F. Supp. 2d 339, 343 (D. Mass. 2004) (same); Arno v. Costa Line, Inc., 589 F. Supp. 1576, 1580-81 (E.D.N.Y. 1984) ("I find that the joinder of Costa Line was improper here, and I therefore dismiss the complaint against it sua sponte, as permitted by Rule 21.").  Nonetheless, because no party can state a claim against any defendant, Blimpie treats the claims of the non-diverse parties as if they were in the case for purposes of this motion.

10045038.2

show that Chans Foods, Inc. ("Chans Foods") purchased its Blimpie franchise business from another Blimpie franchisee, not from any defendant, and that plaintiffs could have cured any zoning issues related to their use of the premises by making minor operational adjustments, but chose instead to abandon their business.  Blimpie, therefore, is entitled to summary judgment dismissing all claims against it.

## **INTRODUCTION**

Although styled as an action in five counts, plaintiffs' claims are all based on a single factual question: Did Blimpie do breach any duty by not telling plaintiffs that a resident group had objected to fast food restaurants in their neighborhood two years prior to Chans Foods' purchase of a Blimpie franchise in that neighborhood that caused plaintiffs to suffer any compensable harm?  The answer is: No.

Plaintiffs assert that Blimpie's alleged failure to tell them about the previous neighborhood objection was a violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq. ("Consumer Protection Act") and constituted fraud, negligent misrepresentation, a breach of the covenant of good faith and fair dealing and unjust enrichment.  As demonstrated below, plaintiffs' claim under the Consumer Protection Act fails because there is no "consumer" transaction involved in this action, merely a business-to-business transaction.  Plaintiffs' common law claims also fail because the terms of their lease and franchise agreement specifically place the risk of any potential zoning problems on plaintiffs.  Moreover, recent developments involving another restaurant use in plaintiffs' very same neighborhood demonstrate that plaintiffs, like their fellow neighborhood restaurateur, could have maintained the certificate of occupancy for their premises had they made modest operational

adjustments.  Instead, plaintiffs chose to close their business and sue virtually everyone in sight, except for the former Blimpie franchisee who actually sold plaintiffs their Blimpie franchise.

**FACTS**

**I.      The Parties and their Relationships.**

Chans Foods is a District of Columbia for-profit corporation formed by Chandar Ratnam. (Statement of Material Facts ("SOF") ¶ 1.)  The sole directors of Chans Foods are Chandar Ratnam and Asha Chandar.  (SOF ¶ 2.)

Blimpie Associates is a New York corporation with a principal place of business in New York which offers Blimpie® brand restaurant franchises for sale.  (SOF ¶¶ 4-5.)  D.C.B.G., Inc. ("DCBG") is a Delaware Corporation with a principal place of business in Virginia.  (SOF ¶ 7.) DCBG is a Blimpie sub-franchisor, pursuant to a sub-franchise agreement with Blimpie (SOF ¶ 7.)  As a sub-franchisor, DCBG operates as a franchise sales representative on behalf of Blimpie Associates.  (SOF ¶ 7.)

H Street Community Development Corporation, Inc. ("H Street") is a District of Columbia corporation with a principal place of business in the District of Columbia.  (SOF ¶ 6.) H Street is the owner of 717 H Street, NE, Washington, DC  ("Location").  (SOF ¶ 26.)

On April 28, 2004, Chans Foods and Blimpie Associates entered into a franchise agreement (the "Franchise Agreement").  (SOF ¶ 15.)  Simultaneous with entering into the Franchise Agreement, Chans Foods signed a sublease with 2001 B.A. Realty, Inc. ("B.A. Realty") to use the Location for its Blimpie franchise.  (SOF ¶ 28.)  B.A. Realty is the sublessor of the Location pursuant to a Major Lease between it and H Street dated August 16, 2002.  (SOF ¶ 27.)

II.     **Chans Foods' Purchase of a Blimpie Franchise.**

In early 2004, Ratnam and Chandar began investigating franchise opportunities, and in so doing, met Leslie Gardner.  (SOF ¶ 8.)  Gardner is a business broker who locates potential purchasers of Blimpie franchises.  (SOF ¶ 7.)  At their first personal meeting, Gardner gave Chandar Ratnam and Asha Chandar a copy of a Blimpie Uniform Franchise Offering Circular ("UFOC"), for which they signed a written receipt.  (SOF ¶¶ 9-10.)

The Blimpie UFOC advises a prospective franchisee, among other things, that a franchisee "must comply with the following Industry Specific Regulations: (i) Federal Immigration Laws, Tax Laws, Unemployment and Workers' Compensation Laws, Employment and Discrimination Laws, Disability Laws, including the Americans with Disabilities Act, and Product Labeling Laws; and (ii) State and local Health, Building, and Zoning Codes."  (SOF ¶ 11.)  The Blimpie UFOC further advises that a franchisee:

> must operate the Blimpie Restaurant in strict conformity with all applicable Federal, state, and local laws, ordinances, and regulations.  Such laws, ordinances, and regulations vary from jurisdiction to jurisdiction and are amendable or may be implemented or interpreted in a different manner from time to time**.  It is your sole responsibility to apprise yourself of the existence and requirements of all laws, ordinances, and regulations applicable to the Blimpie Restaurant, and to adhere to them and to the then-current implementation or interpretation of them.**

(SOF ¶ 12.) (emphasis added)

Plaintiffs ultimately decided to purchase a Blimpie franchise.  To this end, on March 9, 2004, Ratnam purchased rights "to operate a Blimpie Subs and Salad Franchise at 717 H Street NE, Washington, DC," pursuant to an Agreement of Sale with Nazan M. Ali as seller, for the purchase price of $35,000.  (SOF ¶ 13.)  In the Agreement of Sale, Ratnam represented that as of the closing date, "Purchaser is a corporation in good standing in the State [sic] of Virginia . . . ."

(SOF ¶ 13).  By the Agreement of Sale, Mr. Ali agreed to assign an existing Blimpie Franchise

Agreement and License and Assumption Agreement to Purchaser "conditioned upon Purchaser's

execution of a Blimpie Franchise Agreement in current form."  (SOF ¶ 13.)  Shortly thereafter,

on February 26, 2004, Ratnam incorporated Chans Foods.  (SOF ¶ 1).

## III.     The Franchise Agreement

Blimpie Associates and Chans Foods are parties to the Franchise Agreement.  (SOF ¶ 15.)

The Franchise Agreement granted Chans Foods the right and obligation to open and operate a

Blimpie restaurant at the Location.  The Franchise Agreement contains, among others, the

following provisions:

- ○     Blimpie's obligation with respect to finding a location for Chans Foods' franchise
  was limited to approving a site selected by Chans Foods.  (SOF ¶ 18.)  Blimpie
  approved the Location by signing the Sublease.  (SOF ¶¶ 18, 28.)

- ○     An acknowledgment that Chans Foods and Blimpie Associates "are not and shall
  not be considered joint ventures, partners, or agents of each other, or anything
  other than Franchisor and Operator, and neither shall have the power to bind or
  obligate the other except specifically as set forth in this Agreement."  (SOF ¶ 19.)

- ○     A provision that "this Agreement . . . shall be governed by and construed in
  accordance with the laws of the State of New York . . . ."  (SOF ¶ 21.)

## IV.     The Sublease

In conjunction with executing the Franchise Agreement, Chans Foods also entered into

the Sublease.  In addition to its own terms, the Sublease incorporates the terms of a Major Lease

for the Location between B.A. Realty and H Street Community Development Corporation, Inc.

("H Street"), dated August 16, 2002 ("Major Lease").  (SOF ¶¶ 27, 29.)  The Sublease contains, among others, the following provisions:

- An acknowledgment by Chans Foods "that it has read and is fully familiar with the Major Lease."  (SOF ¶ 30.)

- A requirement that "[t]enant shall comply with any and all laws and regulations, including but not limited to zoning laws . . . ."  (SOF ¶ 31.)

- An acknowledgment that "the Premises are leased hereunder 'AS-IS, WHERE-IS', without warranty as to condition, suitability for a particular purpose or any other matter whatsoever."  (SOF ¶ 32.)

## V.    The Location and its Zoning Status

Pursuant to applicable DC zoning classifications, the Location is zoned as "C-2-A." (SOF ¶ 26.)  Pursuant to DC Zoning Regulations, operation of a "restaurant" in a C-2-A location is a use of right, but a special permit is required to operate a "fast food restaurant" in a C-2-A zone.  (SOF ¶ 34.)  The Location's zoning classification and permitted uses within each type of zoning designation is information readily and freely available to the public.  (SOF ¶ 40.)

A "fast food restaurant" is not, by definition, a "restaurant" under the DC Zoning Regulations.  (SOF ¶ 35.)  Under the DC Zoning Regulations, a "fast food restaurant" is a food service establishment having at least two of the following three characteristics: (1) 10% or more of the total floor space on any one floor that is accessible to the public is allocated and used for customer queuing for self-service for carry out and on-premises consumption; (2) at least 60% of food items are already prepared or packaged before a customer places an order; or (3) the establishment primarily serves its food and beverages in disposable containers and provides disposable tableware.  (SOF ¶ 44.)

10045038.2

VI.    **Chans Foods' Operation at the Location.**

On May 19, 2004, Chans Foods was issued a Certificate of Occupancy by the Zoning Administrator of the Department of Consumer and Regulatory Affairs for a "Deli/restaurant" at the Location.  (SOF ¶ 41.)

Following issuance of the Certificate of Occupancy, a local Advisory Neighborhood Commission ("ANC") objected to its issuance on the basis that Chans Foods' Blimpie business was a "fast food restaurant," not a "restaurant."  (SOF ¶ 43.)  On June 13, 2005, the District of Columbia Board of Zoning Adjustment ("BZA") sustained the ANC's objection, held that Chans Foods' business was a "fast food restaurant" and determined that the Department of Consumer and Regulatory Affairs erred in issuing a Certificate of Occupancy as a "restaurant" for the Location to Chans Foods.  (SOF ¶ 45.)

Chans Foods took no steps either prior to or after the hearing on the ANC's objection to ensure that its business would not meet the definition of a "fast food restaurant," although Chans Foods could have avoided classification as a "fast food restaurant" by use of either non-disposable containers for its food and beverages or non-disposable tableware.  (SOF ¶ 47.) Despite notice and opportunity, Chans Foods did not  appeal the BZA decision or otherwise challenge the BZA's determination that Chans Foods operated a fast food restaurant.  (SOF ¶¶ 48-49.)  Instead, Chans Foods  "closed its doors" on or about August 6, 2005, and ceased operating the Blimpie restaurant.  (Complaint ¶ 36.)  On or about December 1, 2005, Chans Foods surrendered possession of the Location to H Street.  (Complaint ¶ 40.)

**PROCEDURAL HISTORY**

On January 31, 2006, plaintiffs filed suit in the Superior Court of the District of Columbia ("Superior Court"), Civil Action No. 06 ca 618B, alleging, inter alia, that all defendants:

10045038.2

(1) violated the Consumer Protection Act (Count One); (2) committed common law fraud (Count Two); (3) made negligent misrepresentations (Count Three); (4) breached the Franchise Agreement and the implied covenant of good faith and fair dealing (Count Four); and (5) were unjustly enriched (Count Five).

On March 2, 2006, Blimpie and DCBG removed the action from the Superior Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Plaintiffs and defendant H Street thereafter  moved to remand the action to the Superior Court, which the Court denied after briefing and argument. Blimpie moved to dismiss and/or transfer all claims to the United States District Court for the Southern District of New York, which the Court also denied.

## STANDARD OF LAW

Fed. R. Civ. P. 56(c) provides that summary judgment should be granted if no genuine issue as to any material fact exists and  the moving party is entitled to judgment as a matter of law.  See Sparks v. Fidelity Nat'l Title Ins. Co, 294 F.3d 259, 265 (1st Cir. 2002).  The Supreme Court has ruled that "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  Cleveland v. Policy Mgm't  Sys. Corp., 526 U.S. 795, 805-06 (1999) (internal quotation marks and citation omitted).  In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side over the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Since plaintiffs bear the burden of proof for each of their claims and, as demonstrated below, such claims fail as a matter of law, Blimpie is entitled to summary judgment dismissing all claims against it.  Broderick v. Donaldson, 437 F.3d 1226, 1231 (D.C. Cir. 2006).

10045038.2

## ARGUMENT

**I.    PLAINTIFFS' CLAIM UNDER THE CONSUMER PROTECTION ACT FAILS AS A MATTER OF LAW.**

Plaintiffs' claim under the Consumer Protection Act fails as a matter of law because the purchase and operation of a business franchise is not a "consumer" transaction. Plaintiffs' claim also fails because the Consumer Protection Act does not permit claims, like the one asserted here, between merchants. Accordingly, plaintiffs' Consumer Protection Act claim must be dismissed.[2]

**A.    The DC Consumer Protection Procedures Act.**

"The [Consumer Protection Act] was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices." Williams v. Purdue Pharm. Co., 297 F. Supp. 2d 171, 174 (D.D.C. 2003) (citation omitted). Although the Consumer Protection Act was "intended to be a far-reaching consumer protection law," its scope is limited to prohibiting those acts which negatively effect "consumer goods or services." Howard v. Riggs Nat'l Bank, 432 A.2d 701, 710 (D.C. 1981). Under the Consumer Protection Act, a person may assert a claim "seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia . . . ." D.C. Code § 28-3905(k)(1). A "trade practice" is defined "as any act which does or would create, alter, repair, furnish, make available, provide information about, or,

---

[2]    The claims nominally made by Ratnam and Chandar individually are not separately addressed. They are shareholders of Chans Foods and have no standing to assert claims that belong to their corporation. As Chans Foods is the only party to the Franchise Agreement and Sublease, (SOF ¶¶ 15,28), and each cause of action concerns alleged breaches and misrepresentations based on the Franchise Agreement and Sublease, Ratnam and Chandar cannot state claims in their individual capacities against any defendant. See Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987) (sole shareholder may not assert claims of corporation, even when facing financial loss); Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F. Supp. 127, 136 (S.D.N.Y. 1988) (shareholder cannot sue in individual capacity to assert claims of corporation); Labovitz v. Washington Times Corp., 900 F. Supp. 500, 503 (D.D.C. 1995) ("[A] shareholder may not sue as an individual if the alleged wrong is primarily against the corporation.") (applying Delaware law).

10045038.2

directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of **consumer** goods or services." D.C. Code § 28-3901(a)(6) (emphasis added). "Consumer," when used in the Consumer Protection Act as an adjective, "describes anything, without exception, which is primarily for personal, household, or family use." D.C. Code § 28-3901(a)(2). Accordingly, relief is available under the Consumer Protection Act for unlawful acts affecting the sale, lease or transfer of personal, household or family use goods or services.

      B.    <u>Blimpie's Failure to Tell Plaintiffs About Past Neighborhood Objection to Fast Food Restaurants Did Not Affect a *Consumer* Good or Service.</u>

Plaintiffs' claim that Blimpie violated the Consumer Protection Act by: (i) not telling plaintiffs that the Location was not zoned for use as a fast food restaurant; (ii) not telling plaintiffs that in 2002 there was neighborhood opposition to the use of the Location as a fast food restaurant; and (iii) representing in its UFOC and Franchise Agreement that it would perform a site analysis of the Location and not performing such an analysis or not reasonably performing such analysis. (Complaint ¶ 56.) This claim fails as a matter of law. First, Chans Foods is a for-profit corporation formed for the purpose of "carrying on [] a profitable business," (SOF ¶ 3), -- by definition, it cannot do anything for "personal, household or family use." Moreover, Chans Foods entered into the Franchise Agreement and Sublease to enable it to conduct a Blimpie business. Because Chans Food has not acquired a "consumer good or service," there can be no "trade practice" and therefore no violation of the Consumer Protection Act.

Numerous cases addressing claims under the Consumer Protection Act have denied relief for allegedly unlawful actions that do not affect "consumer goods or services." For example, in <u>Barlow v. McLeod</u>, 666 F. Supp. 222 (D.D.C. 1986), the court rejected a Consumer Protection Act claim brought by a plaintiff who lent money to the defendant in exchange for the promise of

a job.  Id. at 224.  "The Consumer Protection Act is designed to prohibit certain frauds against persons who purchase, lease, or receive goods or services that are primarily for personal, household, or family use."  Id. at 228.  Granting defendant's motion for summary judgment, the court held that "[u]nder no stretch of the imagination could the transaction in this case be considered a purchase, lease, or receipt of consumer goods."  Id.  The same is true here -- under no stretch of the imagination could the purchase of a Blimpie franchise for the purpose of selling meals to the public at a profit be considered a purchase for personal, household or family use. Accordingly, the result here should follow the result in Barlow.[3]

The same result was reached in Clifton Terrace Associates, Ltd. v. United Technologies Corp., 728 F. Supp. 24 (D.D.C. 1990), aff'd, 929 F.2d 714 (D.C. Cir. 19901)  [hereinafter Clifton].  Clifton involved claims by the corporate owner of an apartment complex against Otis Elevator Company.  Id. at 25.  The apartment complex owner alleged that Otis violated the Consumer Protection Act by refusing to repair elevators in the complex because the complex's residents were predominately black, handicapped or elderly.  Id. at 26.  The Clifton Court dismissed the claim pursuant to Fed. R. Civ. P. 12(b)(6), recognizing that "[t]his Court has held that the legislative history of the CPPA, along with a consistent reading of its provisions, unequivocally indicates that **the CPPA was intended to protect consumers only, and not corporations**."  Id. at 34 (emphasis added).  "Since plaintiff is not a consumer within the meaning of the CPPA, its claims thereunder are properly dismissed."  Id.  Here, as in Clifton,

---

3      The Barlow Court also held that plaintiff's assertion of Consumer Protection Act claim based upon an alleged unfulfilled promise of a job was so devoid of merit as to help justify imposition of Rule 11 sanctions. Barlow, 666 F. Supp. at 230 ("It is clear that the only reason these statutory claims were alleged was because they contain treble damages provisions.").

Chans Foods is not a "consumer," but rather a business entity and here, as in <u>Clifton</u>, its

Consumer Protection Act claim should be dismissed as a matter of law.

Several other decisions hold that the Consumer Protection Act does not apply to non-

consumer claims. <u>See e.g.</u>, <u>Kopff v. Battaglia</u>, C.A. No. 05-798, 2006 U.S. Dist. LEXIS 13638,

*46-48 (D.D.C. Mar. 29, 2006) (holding that recipients of unsolicited faxes failed to state a claim

under Consumer Protection Act against third-party forwarder of faxes because "there is no

consumer-merchant relationship within the meaning of the statute . . . ."); <u>Slaby v. Fairbridge</u>, 3

F. Supp. 2d 22, 27-28 (D.D.C. 1998) (dismissing claims based on defendant's rejection of

plaintiff's manuscript because there was no alleged consumer-merchant relationship);

<u>Mazanderan v. Independent Taxi Owners' Assoc., Inc.</u>, 700 F. Supp. 588, 591 (D.D.C. 1988)

(dismissing claim by owner of taxicab based on alleged unfair gasoline purchase requirement

because "the contested purchases of gasoline and supplies are made in connection with his role as

an independent businessman."); <u>Howard v. Riggs Nat'l Bank</u>, 432 A.2d 701, 708-10 (D.C. 1981)

(holding that an individual's negligent recommendation of a merchant was not a violation of the

Consumer Protection Act because there was no consumer transaction).

      C.    <u>The Sole Case Plaintiffs Identify in Support of their Consumer Protection Act
           Claim Actually Supports Dismissal of their Claim.</u>

The only case plaintiffs have yet identified in support of their Consumer Protection Act

claim, <u>Adam A. Weschler & Son, Inc. v. Klank</u>, 561 A.2d 1003 (D.C. 1989) [hereinafter

<u>Weschler</u>], actually lends further support for dismissal of their claim. <u>Weschler</u> concerns a claim

by an auction house against a bidder who reneged on his high bid for an antique blanket chest.

<u>Id.</u> at 1003. The bidder claimed that the auction house had misrepresented the condition of the

chest <u>and</u> moved to dismiss the claim against him based on an alleged violation of the Consumer Protection Act.  <u>Id.</u>

The <u>Weschler</u> Court focused its analysis of application of the Consumer Protection Act on whether the bidder was a "consumer" entitled to protection under the Act or a "merchant" not entitled to protection.  <u>Id.</u> at 1004-05.  Based on the absence of any facts supporting the auctioneer's claim that the bidder purchased the chest for resale or museum display, the <u>Weschler</u> Court held that the bidder was a "consumer" who "intended to make personal use of this antique chest."  <u>Id.</u> at 1004.  The court further held that:

> Transactions along the distribution chain that do not involve the ultimate retail customer are not "consumer transactions" that the Act seeks to reach.  Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers.  Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather **the nature of the purchaser** that determines the nature of the transaction.

<u>Id.</u> at 1005 (emphasis added).

Here, it is beyond peradventure that "the nature of the purchaser" of a Blimpie franchise is a "merchant" -- in this case, a corporate business entity which expects to make a profit on sales to consumers.  (SOF ¶ 3.)  <u>Weschler</u>, like each of the cases cited above, demonstrates that plaintiffs did not engage in a "consumer transaction" by their purchase.  Rather, plaintiffs' transaction was simply a business-to-business purchase and sale.  <u>See</u> 561 A.2d at 1005 ("[The Consumer Protection Act] is not intended to supply merchants with a private cause of action against other merchants.") (internal quotation marks and citation omitted).  Accordingly, plaintiffs' Consumer Protection Act claim against Blimpie should be dismissed.

## II.   PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW.

Counts II and III of plaintiffs' complaint for fraud and negligent misrepresentation also fail as a matter of law and should be dismissed.  Again, plaintiffs' claims are based solely on Blimpie's failure to tell them in 2004, when Chans Foods purchased the franchise from the previous franchisee, about the ANC's 2002 opposition to fast food restaurants at the Location. Plaintiffs' claims fail because Blimpie had no duty to disclose the ANC's 2002 opposition to fast food restaurants and because Blimpie's belief, albeit inaccurate, that the ANC would not in 2004 challenge a Blimpie restaurant opening at the Location was a prediction of future events that cannot be the basis of a fraud or negligent misrepresentation claim.  In addition, any damages plaintiffs have suffered were not proximately caused by Blimpie, but rather by their own failure to take steps to assure that their franchise was not classified as a "fast food restaurant." Plaintiffs' claims for fraud and negligent misrepresentation should, therefore, be dismissed.[4]

### A.   Blimpie Had No Duty to Tell Plaintiffs About the ANC's 2002 Opposition to Fast Food Restaurants at the Location Pursuant to the Franchise Agreement and the Sublease.

To state a fraud or negligent misrepresentation claim based on an omission of a material fact, there must be a duty to disclose the material fact.[5]  See Ahern v. Scholz, 85 F.3d 774, 793

---

[4]     Again, Ratnam and Chandar's alleged individual claims as guarantors of Chans Foods' obligations are not addressed because the Complaint contains no allegation that either has suffered any damage.  See Labovitz, 900 F. Supp. at 505 (denying standing to individual guarantor who suffered no damage and recognizing that several courts have "rejected the assertion that a stockholder's status as a guarantor of a corporate debt gives him standing to assert an individual claim against some third party.") (international quotation marks omitted) (collecting cases); European Am. Bank v. Lofrese, 182 A.D.2d 67, 73 (N.Y. App. Div. 1992) ("A defendant who has been sued as a guarantor or surety cannot avail himself, in exoneration of his liability, of a cause of action to recover damages for breach of the contract with his principal.") (citation omitted); Beneficial Capital Corp. v. Richardson, Civil Action No. 92 Civ. 3785 (LLS),1995 U.S. Dist. LEXIS 7354, at *17 (S.D.N.Y. May 31, 1995) ("Thus, [plaintiff] was not a tenant but a guarantor and has no standing to sue under the lease for any breach which occurred . . . .") (citation omitted).

[5]     Because it is unclear whether New York law (pursuant to the Franchise Agreement) or District of Columbia law governs plaintiffs' common law claims against Blimpie, citations are provided for both jurisdictions.  A choice of law analysis is not required because the substantive law of the two jurisdictions concerning the common law

10045038.2

- 15 -

(1st Cir. 1996) ("[T]he party claiming fraudulent concealment must demonstrate that the opposing party had a duty to disclose the material information in question and demonstrate each element of the claim by clear and convincing evidence.") (applying NY law); <u>Ideal Elec. Sec. Co. v. Scientech, Inc.</u>, C.A. No. 97-2098 (TFH), 1998 U.S. Dist. LEXIS 11484, *4 (D.D.C. Jul. 15, 1998) ("Failure to disclose a fact constitutes fraud where one party owes the other a duty to disclose the fact.") (citation omitted).  To avoid dismissal, plaintiffs must demonstrate that a Blimpie franchise is a "fast food restaurant" and that Blimpie had a duty to tell them of possible problems securing a "fast food restaurant" Certificate of Occupancy for the Location.  Because Chans Foods obtained a Certificate of Occupancy, Blimpie had no duty to tell plaintiffs about the position of certain members of the ANC in 2002 under the Franchise Agreement and Sublease and could have to steps to avoid operating their franchise as a "fast food restaurant," plaintiffs' claims for fraud and negligent misrepresentation fail as a matter of law.[6]

Where, as here, parties contractually agree that a buyer or lessor of land will be responsible for permitting issues, claims for fraud and misrepresentation will not lie under New York law.  See <u>Oneida City Sch. Dist. v. Seiden & Sons, Inc.</u>, 576 N.Y.S.2d 442 (N.Y. App. Div. 1991).  In <u>Oneida</u>, the defendant made an offer to purchase certain land upon which it intended to develop, construct and manage senior citizen housing.  <u>Id.</u> at 444.  Oneida knew of defendant's intended use of the property and that "a prior prospective purchaser's proposal to convert the building into senior citizen housing had been turned down by the local Zoning Board of

---

claims is equivalent.  See <u>Greaves v. State Farm Ins. Co.</u>, 984 F. Supp. 12, 14 (D.D.C. 1997) ("A false conflict exists when the laws of different states are: 1) the same; 2) different but would produce the same outcome under the facts of the case; or 3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws.").

[6]       Cases addressing a duty to disclose where a "special" or fiduciary relationship exits between parties are inapposite given the parties' express disclaimer of any such relationship.  (SOF ¶ 20.)

Appeals."  Id.  Despite this, the <u>Oneida</u> Court held that the seller had no duty to warn the purchaser of the potential problem with its planned use of the land because there was no special relationship between them.  Id.  ("In the absence of a special relationship between two parties to a contract, no duty to disclose exists.") (internal quotation marks and citation omitted).  The <u>Oneida</u> Court went on to hold:

> There is no allegation that plaintiff had exclusive knowledge of the alleged undisclosed fact.  Nor is there any allegation that defendant made any effort, even as little as a telephone call to the local zoning officer, to ascertain, prior to making its bid, the feasibility of obtaining zoning approval for the project.  A party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

Id. (internal quotation marks and citation omitted).  See also <u>Kosher Konvenience, Inc. v. Ferguson Realty Corp.</u>, 567 N.Y.S.2d 131, 132 (N.Y. App. Div. 1991) (dismissing claim to void commercial lease based on inability to obtain a certificate of occupancy where "lease specifically provided that the plaintiff would procure a certificate of occupancy at its own expense in the event one was required by any governmental authority."); <u>Jordache Enters., Inc. v. Gettinger Assocs.</u>, 575 N.Y.S.2d 58, 59 (N.Y. App. Div. 1991) (plaintiff's reliance on the defendant's alleged representation regarding the existence of a certificate of occupancy was not reasonable because "the terms of the certificate of occupancy, a public record, were not within the exclusive knowledge of the defendant."); <u>see also</u> <u>Villa Marin Chevrolet v. GM Corp.</u>, Civil Action No. 98-CV-6167 (JG), 1999 U.S. Dist. LEXIS 17972, at *14-15 (S.D.N.Y. Nov. 18, 1999) ("It is unreasonable, as a matter of law, for a party to claim that it was fraudulently induced to enter into a contract by a prior representation when reliance on that representation is specifically disclaimed in the contract [by an integration clause].") (citation omitted).

- 17 -

Plaintiffs' claims for fraud and negligent misrepresentation also do not lie under District of Columbia law.  See Kapiloff v. Abington Plaza Corp., 59 A.2d 516 (D.C. 1948.).  In Kapiloff, plaintiff entered into a contract to purchase certain real property and paid a $2,000 deposit towards purchase.  Id. at 517.  Plaintiff subsequently discovered a statute authorizing the United States Government to acquire by condemnation the land he sought to purchase and refused to close the purchase.  Id.  Plaintiff then sought return of his deposit based on the seller's failure to warn him of the statute.  Id.

The Kapiloff Court rejected plaintiff's claim for return of his deposit.  "There is, of course, no question that mere silence does not constitute fraud unless there is a duty to speak.  Here, on the undisputed evidence there was no such duty."  Id.  Likewise, there was "no duty to speak" here because both the Franchise Agreement and the Sublease placed the burden of investigating zoning laws and obtaining necessary permits squarely on Chans Foods.  (SOF ¶¶ 16-17, 31-32) (placing burden of finding and securing necessary permits on Chans Foods).  Moreover, the information about zoning requirements was readily available to Chans Foods if it had bothered to inquire.  See (SOF ¶ 40) (DC zoning requirements are generally and freely available); Kapiloff, 59 A.2d at 517 ("The Act of Congress on which he relied as a ground of voiding the purchase was as readily available to him as it was to the vendor."); see also One-O-One Enters., Inc. v. Caruso, 848 F.2d 1283, 1287 (D.C. Cir. 1988) ("Were we to permit plaintiffs' use of the defendants' prior representations (and defendants' nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement's integration clause, contracts would not be worth the paper on which they are written.") (internal quotation marks and citations omitted).  Because Blimpie had no duty to tell

10045038.2

plaintiffs about possible zoning concerns, plaintiffs' fraud and misrepresentation claims fail as a matter of law.

B.     There Was No Duty to Tell Plaintiffs About the ANC's Possible Future Actions.

Plaintiffs' fraud and misrepresentation claims also fail because Blimpie had no duty (or ability) to predict the ANC's future actions.  The gist of plaintiffs' claim is that  had they known about the ANC's 2002 opposition to fast food restaurants, Chans Foods would not have purchased a Blimpie franchise in 2004.  Their claim fails because the ANC's 2002 statements are, at best, a marginal  indicator of what its position might be in 2004 and cannot be the basis of a fraud or misrepresentation claim.  See Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20-21 (2d Cir. 2000) (rejecting misrepresentation claim under New York law because "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.") (collecting cases); Day v. Avery, 548 F.2d 1018, 1025-26 (D.C. Cir. 1976) ("[A] statement that one would or would not be worse off in the future - whether characterized as a prediction, opinion or promise - ordinarily would not be a sufficient predicate for such an action as between parties truly dealing at arms' length.").  In addition, at the time Chans Foods purchased its franchise, Blimpie had no knowledge about the ANC's then current position. (SOF ¶ 38.)  Accordingly, any statement by Blimpie in 2004 as to how the ANC would respond to Chans Foods' franchise based on the ANC's position of two years earlier would be wild speculation.  Such speculation about a third party's future intent cannot be the basis of a fraud or misrepresentation claim.

C.     Plaintiffs are Solely Responsible for any Damages they have Suffered.

Plaintiffs claims also fail because they are solely responsible for any damages they have suffered.  Pursuant to the applicable DC zoning regulations, Chans Foods could operate a

"restaurant" at the Location as a matter of right and was given authority to do so on May 19,

2004. (SOF ¶¶ 34, 41.)  By definition, a "restaurant" is not a "fast food restaurant."  (SOF ¶ 35.)

Accordingly, so long as Chans Foods' franchise did not meet the definition of a "fast food

restaurant," it would be deemed a "restaurant" and permitted to continue operating pursuant to its

Certificate of Occupancy.

> A "fast food restaurant" is defined as a restaurant where:
>
> the floor space allocated and used for customer queuing for self-service for carry
> out and on-premises consumption is greater than ten percent (10%) of the total
> floor space on any one (1) floor that is accessible to the public **and** it exhibits one
> (1) of the two (2) following characteristics:
>
> > (a)     At least sixty percent (60%) of the food items are already prepared
> > or packaged before the customer places an order; and/or
> >
> > (b)     The establishment primarily serves its food and beverages in
> > disposable containers and provides disposable tableware.

11 DCMR § 199.1 (emphasis added).

Here, there is no dispute that less than 60% of the food items served at Chans Foods'

franchise were already prepared or packaged before customers placed orders.  (Complaint Ex. E

¶ 10 at 3.)  Accordingly, so long as Chans Foods took appropriate steps to serve its food and

beverages in non-disposable containers and/or provided non-disposable tableware, it would not

meet the definition of a "fast food restaurant."

The availability and effectiveness of this simple remedy, using non-disposable containers,

was recently proven by another franchise restaurant near the Location, Cluck-U.  (SOF ¶¶ 50-

54.)  There, as here, the ANC challenged the Certificate of Occupancy issued to Cluck-U based

on Cluck-U's alleged "fast food restaurant" status.  (SOF ¶ 53.)  As the transcript from the ZBA

hearing on the Cluck-U certificate of occupancy demonstrates, Cluck-U successfully defeated the

ANC's objection by simply using disposable containers and/or disposable tableware at its

franchise.  (SOF ¶ 54.)

    For whatever reason, Chans Foods did not avail itself of this simple option to keep

operating at the Location.  Chans Foods, not Blimpie, is therefore responsible for any losses

plaintiffs have suffered.

## III.    PLAINTIFFS' BREACH OF CONTRACT/BREACH OF IMPLIED COVENANT OF GOOD FAITH CLAIM FAILS AS A MATTER OF LAW.

    Plaintiffs' breach of contract and the covenant of good faith and fair dealing claim

(Count IV) fails because there has been no breach of the Franchise Agreement.[7]  Here, the only

alleged breach of contract is "Blimpie's failure to not [sic] perform a site selection analysis of the

[Location], or, considering Defendants' knowledge of the facts regarding the [Location], perform

its obligation to perform a site selection analysis in a reasonable manner."  (Complaint ¶ 48.)

Pursuant to the Franchise Agreement, Blimpie's only obligation with respect to site selection was

to "approve the Location of the Operator."  (SOF ¶ 18.)  The Franchise Agreement further

provides that Blimpie's approval is granted when it signs a sublease for the proposed location.

(SOF ¶ 18.)  Here there is no dispute that B.A. Realty entered into the Sublease with Chans

Foods, thereby approving the Location.  (Complaint Ex. B.)  There was, therefore, no breach of

contract.  See also Fesseha v. TD Waterhouse Investor Servs., 761 N.Y.S.2d 22, 23 (N.Y. App.

Div. 2003) ("While the covenant of good faith and fair dealing is implicit in every contract, it

---

7    Unlike plaintiffs' claims for fraud, negligent misrepresentation and unjust enrichment, because the claim for breach of contract and the covenant of good faith and fair dealing necessarily is based on the Franchise Agreement, it is governed exclusively by New York law.  Godbey v. Frank E. Basil, Inc., 603 F. Supp. 775, 776 (D.D.C 1985) ("Unless the parties' choice of law is that of a state lacking a substantial relationship to the parties or the transaction, or unless the chosen law would contradict a fundamental policy of the District of Columbia, a District of Columbia court would enforce the contract provision, and this Court, sitting in diversity, must do likewise."); (SOF ¶¶ 4, 21) (New York choice of law provision based on Blimpie's principal place of business in New York).

- 21 -

cannot be construed so broadly as effectively to nullify other express terms of a contract, **or to create independent contractual rights**.") (citations omitted) (emphasis added).

There was also no breach based on any provisions of the Uniform Franchise Offering Circular ("UFOC"), which itself is not a contract and has no contractual force.  See C.K.H., L.L.C. v. Quizno's Master, L.L.C., Civil Action No. 04-RB-1164 (BNB), 2005 U.S. Dist. LEXIS 42347, at *10 (D. Colo. Mar. 25, 2005) (holding that UFOC is not a contract and cannot give rise to a breach of contract claim).  Moreover, assuming, arguendo, that the UFOC required Blimpie to perform an analysis of the Location prior to entering into the Sublease (Complaint ¶ 29), the complaint contains no allegations that Blimpie did not do so.  Indeed, there are no allegations in the Complaint that Blimpie did not consider the proposed rent, population mixture, geographic area and business hours of the Location.  Because plaintiffs have failed to demonstrate, let alone allege, that Blimpie failed to meet a contractual obligation, its breach of contract and the covenant of good faith and fair dealing claim should be dismissed.

## IV.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' claim for unjust enrichment fails because there is an express contract between the parties and there has been no breach of that contract.  To state a claim for unjust enrichment, plaintiffs must demonstrate that: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit."  Rapaport v. United States Dep't of the Treasury, Office of Thrift Supervision, 59 F.3d 212, 217 (D.C. Cir. 1995); Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (same under NY law).  Here, the only "unjust enrichment" plaintiffs

allege Blimpie received was payment of franchise fees.[8]  (Complaint ¶ 74.)  Because such fees

were paid to Blimpie pursuant to a valid, enforceable agreement, plaintiffs' unjust enrichment

claim fails as a matter of law.  See Albrecht v. Committee on Employee Benefits of the Fed.

Reserve Employee Benefits Sys., 357 F.3d 62, 69 (D.C. Cir. 2004) ("[T]here can be no claim for

unjust enrichment when an express contract exists between the parties.") (internal quotation

marks omitted) (citing Schiff v. AARP, 697 A.2d 1193, 1194 (D.C. 1997)); MacDraw, Inc. v.

CIT Group Equip. Fin., 157 F.3d 956, 964 (2d Cir. 1998) ("[T]he existence of a valid and

enforceable written contract governing a particular subject matter ordinarily precludes recovery

in quasi contract [i.e., unjust enrichment] for events arising out of the same subject matter.")

(internal quotation marks and citations omitted) (applying NY law).

## CONCLUSION

For the foregoing reasons, defendants Blimpie Associates, Ltd. and 2001 B.A. Realty,

Inc. respectfully request that the Court grant their motion for summary judgment and dismiss

plaintiffs' claims against them.

---

8  Indeed, Blimpie received no initial franchise fee as a result of Chans Foods' franchise purchase.  The only fees Blimpie received were on-going royalties based on actual sales while Chans Foods was using the Blimpie System and marks.  (SOF ¶ 25; Complaint Ex. C. ¶ 9.1.1 at 15.)

10045038.2

- 23 -

Respectfully submitted,

**BLIMPIE ASSOCIATES, LTD. and
2001 B.A. REALTY, INC.,**
By their attorneys,


_____/s/_____
Christopher J. Wallace (Bar No. 476942)
Arthur L. Pressman (pro hac vice)
Gregg A. Rubenstein (pro hac vice)
NIXON PEABODY LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8080

Dated: July 20, 2006

10045038.2