UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

CHANDAR RATNAM, ASHA CHANDAR,
and CHANS FOODS, INC.,

    Plaintiffs,

v.

BLIMPIE ASSOCIATES, LTD., 2001 B.A.
REALTY, INC., D.C.B.G., INC., and H
STREET COMMUNITY DEVELOPMENT
CORPORATION, INC.,

    Defendants.

CIVIL ACTION NO. 1:06-cv-00372-JR

## DEFENDANTS BLIMPIE ASSOCIATES, LTD AND 2001 B. A. REALTY, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In accordance with Local Civil Rule 7(h), defendants Blimpie Associates, Ltd. ("Blimpie Associates") and 2001 B.A. Realty, Inc. (together, "Blimpie") sets forth a concise statement of the material facts as to which Blimpie contends there is no genuine issue.[1]

In setting forth these facts, Blimpie does not concede all such facts to be true for purposes of trial, but instead accepts all such facts as true for purposes of its Motion. Not every fact included in this statement is material to each alternative legal theory pursuant to which the Court may grant summary judgment. Further, some facts are included solely to provide the Court with useful background information and context.

---

[1] All cited exhibits and documents are authenticated by the Declaration of Gregg A. Rubenstein ("Rubenstein Dec.") which is filed contemporaneously herewith.

1. Chans Foods, Inc. ("Chans Foods") is a District of Columbia for profit corporation incorporated on February 26, 2004 by Chandar Ratnam. (Complaint ¶ 1; Rubenstein Dec. Ex. A.)

2. The sole directors of Chans Foods are Chandar Ratnam and Asha Chandar. (Rubenstein Dec. Ex. A.)

3. Chans Foods was organized for the purpose of "carrying on a [] a profitable business . . . ." (Rubenstein Dec. Ex. A at Paragraph Third, page 1.)

4. Blimpie Associates is a New York corporation with a principal place of business in New York. (Complaint ¶ 14.)

5. Blimpie Associates offers Blimpie® brand restaurant franchises for sale. (Complaint ¶ 14.)

6. H Street Community Development Corporation, Inc. ("H Street") is a District of Columbia corporation with a principal place of business in the District of Columbia. (Complaint ¶ 5.)

7. D.C.B.G., Inc. ("DCBG") is a Delaware Corporation with a principal place of business in Virginia. (Complaint ¶ 4.) DCBG is a Blimpie sub-franchisor pursuant to a subfranchise agreement that operates as a franchise sales representative on behalf of Blimpie Associates.

8. In early 2004, Chandar Ratnam and Asha Chandar began investigating franchise opportunities, and in so doing, met Leslie Gardner, a business broker. (Complaint ¶¶ 24, 26).

9. At their first personal meeting, Gardner gave Chandar Ratnam and Asha Chandar a copy of a Blimpie Uniform Franchise Offering Circular. (Complaint ¶ 26).

10. Chandar Ratnam signed a receipt for the Blimpie Uniform Franchise Offering Circular on February 25, 2004. (Rubenstein Dec. Ex. B.)

11. The Blimpie Uniform Franchise Offering Circular states that a franchisee "must comply with the following Industry Specific Regulations: (i) Federal Immigration Laws, Tax Laws, Unemployment and Workers' Compensation Laws, Employment and Discrimination Laws, Disability Laws, including the Americans with Disabilities Act, and Product Labeling Laws, and (ii) State and local Health, Building, and Zoning Codes." (Rubenstein Dec. Ex. C, Industry Specific Regulations at 10.)

12. The Blimpie Uniform Franchise Offering Circular further states that a franchisee "must operate the Blimpie Restaurant in strict conformity with all applicable Federal, state, and local laws, ordinances, and regulations. Such laws, ordinances, and regulations vary from jurisdiction to jurisdiction and are amendable or may be implemented or interpreted in a different manner from time to time. It is your sole responsibility to apprise yourself of the existence and requirements of all laws, ordinances, and regulations applicable to the Blimpie Restaurant, and to adhere to them and to the then-current implementation or interpretation of them." (Rubenstein Dec. Ex. C at 50.)

13. On March 9, 2004, Chandar Ratnam purchased rights "to operate a Blimpie Subs and Salad Franchise at 717 H Street NE, Washington, DC," pursuant to an Agreement of Sale with Nazan M. Ali as seller, for the purchase price of $35,000. In the Agreement of Sale, Ratnam represented that as of the closing date, "Purchaser is a corporation in good standing in the State [sic] of Virginia…." By the Agreement of Sale, Ali agreed to assign an existing Blimpie Franchise Agreement, and License and Assumption Agreement, to Purchaser

"conditioned upon Purchaser's execution of a Blimpie Franchise Agreement in current form." (Rubenstein Dec. Ex. D.)

14.     On April 28, 2004, Chans Foods assumed all of the "right, title and interest" of Munni Enterprises, Inc. in a Blimpie Franchise Agreement dated August 17, 2001, and accepted an assignment of such Franchise Agreement.  Nizan M. Ali as president of Munni Enterprises, Inc. and Chandar Ratnam as president of Chans Foods executed an Assignment and Assumption of Franchise Agreement, to which Blimpie Associates, by its president, Nicholas Lagano, Jr. consented.  (Rubenstein Dec. Ex. E.)

15.     On April 28, 2004, Chans Foods and Blimpie Associates signed a Traditional Location Franchise Agreement ("Franchise Agreement").  (Complaint ¶ 1; Complaint Ex. C.)

16.     Article 2 of the Franchise Agreement provides in relevant part that Chans Foods "at its own expense, shall obtain all municipal and state licenses necessary to operate Operator's System Restaurant prior to commencing business at its System Restaurant and shall maintain all licenses in full force and effect during the term of this Agreement."  (Complaint Ex. C at 4-5.)

17.     Paragraph 5.2 of the Franchise Agreement, COMPLIANCE, provides in relevant part that Chans Foods "shall comply with all applicable ordinances, laws, statutes and regulations governing the operation of [its] premises…."  (Complaint Ex. C at 8.)

18.     Paragraph 18.1.1 of the Franchise Agreement provides that with respect to finding a location for Chans Foods' franchise, Blimpie has no obligation beyond approving the site selected by Chans Foods.  (Complaint Ex. C at 26.)  Blimpie's signing of the Sublease constituted its approval of the Location.  (Complaint Ex. C ¶ 1.3 at 4.)

19.     Paragraph 20.1 of the Franchise Agreement provides that Chans Foods and Blimpie "are not and shall not be considered joint ventures, partners, or agents of each other, or

anything other than Franchisor and Operator, and neither shall have the power to bind or obligate the other except specifically as set forth in this Agreement. (Complaint Ex. C at 28.)

20. Paragraph 20.1 of the Franchise Agreement further provides that "the relationship created by this Agreement is not a fiduciary relationship." (Complaint Ex. C at 28.)

21. Paragraph 21.1 of the Franchise Agreement provides in relevant part that "this Agreement . . . shall be governed by and construed in accordance with the laws of the State of New York . . . ." (Complaint Ex. C at 29.)

22. Paragraph 23.3 of the Franchise Agreement provides that "[t]here is no other agreement, representation or warranty made by Franchisor or any other entity or person associated with Franchisor other than contained in this Agreement." (Complaint Ex. C at 31.)

23. Paragraph 23.3 of the Franchise Agreement further provides that: "[t]his Agreement is not subject to or conditioned upon the obtaining of a Location for Operator's System Restaurant." (Complaint Ex. C at 31.)

24. Rider paragraph 5 of the Franchise Agreement acknowledges that "[t]his franchise agreement is in replacement of the franchise agreement by and between Blimpie Associates, Ltd., as Franchisor and Munni Enterprises, Inc., as Operator dated August 17, 2001 which has been assigned and assumed by Operator herein…." (Complaint Ex. C at 33.)

25. Blimpie charged Chans Foods a $1 initial franchise fee under the Franchise Agreement. According to the Blimpie Uniform Franchise Offering Circular, the initial franchise fee for a Traditional Location Franchise was then $18,000. (Rubenstein Dec. Ex. C, Item 5 at 17.)

26. H Street is the owner of 717 H Street, NE, Washington, D. C. which is zoned as C-2-A. (Complaint ¶ 16; Complaint Ex. E ¶ 3 at 2; Rubenstein Dec. Ex. F.)

10044917.1

27.     On August 16, 2002, H Street entered into a lease with 2001 B.A. Realty, Inc. ("B.A. Realty") for premises at 717 H Street "solely for the following purposes….: a typical Blimpie submarine sandwich restaurant with related Blimpie restaurant food sales, including Blimpie authorized pizza Co-Brand, cookies and Boardwalk Fries, and no other purpose." ("Major Lease").  (Rubenstein Dec. Ex. F, Permitted Use at 1; Complaint ¶ 16.)

28.     On April 28, 2004, Chans Foods and B. A. Realty signed a Sublease for the premises known as Retail Center, 8th and H Streets, NE, Washington, D.C., also known as 717 H Street, NE, the premises for which Ratnam purchased the franchise rights from Ali on March 9, 2004 for $35,000.  (Complaint Ex. B; Rubenstein Dec. Ex. D.)

29.     Paragraph 2 of the Sublease provides in part that "[e]ach and every term of the Major Lease is hereby incorporated into this Sublease with like effect as if herein set forth in full . . . ."  (Complaint Ex. B ¶ 2 at 1.)

30.     Pursuant to paragraph 11 of the Sublease, Chans Foods "acknowledges that it has read and is fully familiar with the Major Lease."  (Complaint Ex. B ¶ 11 at 3.)

31.     Section 3.02 of the Major Lease provides in relevant part that "[t]enant shall comply with any and all laws and regulations, including but not limited to zoning laws . . . ."  (Rubenstein Dec. Ex. F § 3.02 at 12.)

32.     Section 5.03 of the Major Lease provides in relevant part that "[t]enant acknowledges that the Premises are leased hereunder 'AS-IS, WHERE-IS', without warranty as to condition, suitability for a particular purpose or any other matter whatsoever."  (Rubenstein Dec. Ex. F § 5.03 at 19.)

33. Likewise, when Chan Foods, Inc. purchased Ali's interest in the premises, Ali made "no warranty or representations as to the condition of the Premises, and Purchaser agrees to accept the same 'as is.'" (Rubenstein Dec. Ex. D ¶ 7a.)

34. A "restaurant" is a matter-of-right use in areas zoned as C-2-A. (Complaint Ex. E ¶ 3 at 2.) A "fast food restaurant" is a not a matter-of-right use in areas zoned C-2-A, but requires a special permit. (Complaint Ex. E ¶ 4 at 2.)

35. A "fast food restaurant" is not, by definition, a "restaurant" under the District of Columbia Zoning Regulations. (Complaint Ex. E ¶ 8 at 2.)

36. Prior to signing the Major Lease, Blimpie was aware of opposition by the local Advisory Neighborhood Commission ("ANC") to the opening of a fast food restaurant at 717 H Street, NE. (Complaint ¶ 17.)

37. On June 12, 2002, Blimpie officials met with representatives of the ANC to address their concerns about a fast food restaurant opening at 717 H Street, NE. (Complaint ¶ 18.)

38. Plaintiffs do not allege that Blimpie knew or should have known of the ANC's continuing objection to a fast food restaurant at 717 H Street, NE, subsequent to June, 2002, let alone two years later.

39. Plaintiffs do not allege that they undertook any steps to determine the zoning classification of 717 H Street, NE.

40. Zoning designations for the District of Columbia are a matter of public record and freely available over the internet. See DC Office of Zoning Homepage, http://www.dcoz.dcgov.org/main.shtm.

10044917.1

41.     On or about May 19, 2004, the District of Columbia Department of Commerce and Regulatory Affairs issued Chans Foods a Certificate of Occupancy for use of 717 H Street, NE, as a "Deli/restaurant." (Complaint Ex. E at 1.)

42.     On or about May 22, 2004, Chans Foods opened for business at 717 H Street, NE. (Complaint ¶ 35.)

43.     On July 13, 2004, the ANC appealed the Certificate of Occupancy issued to Chans Foods on May 19, 2004 on the basis that its use of the premises at 717 H Street, NE, was a "fast food restaurant," not a "deli/restaurant," and that a special permit is required to operate a fast food restaurant in an area zoned as C-2-A. (Complaint Ex. E at 1.)

44.     Under the District of Columbia Zoning Regulations, a "fast food restaurant" is a food service establishment having at least two of the following three characteristics: (1) 10% or more of the total floor space on any one floor that is accessible to the public is allocated and used for customer queuing for self-service for carry out and on-premises consumption; (2) at least 60% of food items are already prepared or packaged before a customer places an order; or (3) the establishment primarily serves its food and beverages in disposable containers and provides disposable tableware. 11 DCMR § 199.1 (copy attached for reference as Exhibit A).

45.     On June 13, 2005, the BZA granted the appeal by the ANC, and held that Chans Foods was using the premises at 717 H Street as a "fast food restaurant." (Complaint Ex. E.)

46.     In granting the ANC's appeal, the BZA held that "[a]pproximately 10-15% of the food items offered by the establishment at the subject property are prepared or packaged before a customer places an order." (Complaint Ex. E ¶ 10 at 3.)

47.     At no time after June 13, 2005 did Chans Foods bring its operation at 717 H Street, NE, within the definition of a "restaurant." Had Chans Foods used non-disposable

containers or non-disposable tableware, and changed no other aspect of its use, the Blimpie business would have by definition not qualified as a "fast food restaurant," and would have qualified as a "restaurant," a permitted use.

48.    At no time after June 13, 2005 did Chans Foods make application for a special exception that would permit it to operate its Blimpie business as a "fast food restaurant."

49.    At no time after June 13, 2005 did Chans Foods appeal from the decision of the Board of Zoning Appeals.

50.    Cluck-U is an established and successful restaurant chain specializing in chicken sandwiches and chicken wings.  See Cluck-U Website, http://cluckuchicken.com/aboutclucku.htm.

51.    A Cluck-U chicken franchise has been located at 1123 H Street, N.E. Washington, D.C. since at least 2005.  Paul Schwartzman, A Dispute Over Restaurant Zoning Creates a Chasm Between Northeast Washington's Old and New Residents, The Washington Post, Apr. 4, 2006, at B1 (Rubenstein Dec. Ex. G.)

52.    The Cluck-U franchise located at 1123 H Street is also in a C-2-A zoning district. (Rubenstein Dec. Ex. H at 6.)

53.    The ANC appealed  the Certificate of Occupancy granted to the Cluck-U franchise at 1123 H Street on the same basis as it had appealed Chans Foods' Certificate of Occupancy – Cluck U's use was, according, to ANC a "fast food restaurant," and not a "restaurant.". (Rubenstein Dec. Ex. H at 9.)

54.    On or about June 6, 2006, the BZA dismissed ANC's appeal of the Cluck-U Certificate of Occupancy, finding that Cluck U was not a "fast food restaurant" because less than 60% of the food items Cluck U sold were already prepared or packaged before the customer

10044917.1

placed an order and the majority of food served at the Cluck U restaurant was not served in disposable containers. (Rubenstein Dec. Ex. H at 17, 25.)

        Respectfully submitted,

        **BLIMPIE ASSOCIATES, LTD. and
2001 B.A. REALTY, INC.,**
By their attorneys,

        /s/
Christopher J. Wallace (Bar No. 476942)
Arthur L. Pressman (pro hac vice)
Gregg A. Rubenstein (pro hac vice)
NIXON PEABODY LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8080

Dated: July 20, 2006

10044917.1