time and in such manner as to not unreasonably interfere with the use and enjoyment of the remainder of the Retail Center by any other tenant or other person. Landlord may, as a condition of granting its consent or approval hereunder, require Tenant to post such payment and performance bonds as Landlord deems reasonable to protect Landlord, any Mortgagee, and the Premises. In making any alteration, addition or improvement to the Premises, Tenant shall use materials equal or exceeding in quality and kind the original construction, as certified by the architect who designed the Retail Center or by such other architect as is designated by Landlord. All such alterations, additions and improvements shall be performed (a) in a good and workmanlike manner; (b) in accordance with all applicable laws and regulations, including but not limited to the ADA; (c) in accordance with all applicable insurance requirements and requirements of any Mortgagee; and (d) in accordance with the drawings, plans and specifications approved by Landlord. All work performed by Tenant shall be subject to Landlord's inspection and approval to determine whether it complies with the requirements of this Lease. Prior to the commencement of any such work by Tenant, Tenant shall obtain all necessary endorsements to the insurance required by Article IV hereof to be sure the same covers the performance of such work. Furthermore, Tenant shall defend, indemnify and hold harmless Landlord from and against any and all damages, losses or liability arising from such alterations or improvements or the construction thereof by Tenant or by any other party other than Landlord.

§5.05 <u>Mechanics' Liens</u>. Tenant shall (a) within ten (10) days after receipt of notification thereof bond or have released any mechanics', materialman's or other lien filed or claimed against any or all of the Premises, the Building, or any other property owned or leased by Landlord by reason of labor or materials provided for Tenant or any of its contractors or subcontractors, or otherwise arising out of Tenant's use or occupancy of the Premises; and (b) defend, indemnify and hold harmless Landlord from and against any and all liability or expense (including but not limited to attorneys' fees) incurred by Landlord on account of any such lien or claim.

§5.06 <u>Ownership</u>. Any and all improvements, repairs, alterations, fixtures (except removable trade fixtures, unless paid for by Landlord) or other property attached to or otherwise affixed to the Premises by Landlord or Tenant shall, immediately on the completion of their installation, become Landlord's property, subject to §1.03 hereof.

## ARTICLE VI - MAINTENANCE

§6.01 <u>Maintenance by Tenant</u>. Except for the repairs and maintenance that Landlord is specifically obligated to make or perform pursuant to §6.02 hereof, Tenant shall, at its own expense and throughout the Term of this Lease, promptly make all repairs and replacements, and perform all maintenance, in, to or about the Premises, and to the equipment and fixtures therein or appurtenant thereto, that are necessary or desirable in order to keep the Premises in good, clean, safe and working order, condition and repair, or that are required by law or governmental authority, any Mortgagee, or any insurance carrier providing an insurance policy to Landlord or Tenant in connection with the Retail Center, the Premises or this Lease. Without limiting the foregoing, Tenant, at its expense, is specifically required to make promptly all repairs (or, if applicable, to notify

20

promptly the respective utility company to make all repairs within its exclusive control) to (a) all pipes, water and waste lines, ducts, wires and conduits beneath or in the Premises or within the ceiling of the Premises; (b) the glass windows and plate glass doors of the Premises; (c) Tenant's sign(s); (d) all electrical, natural gas (if any), plumbing and other systems, equipment, fixtures and other items to the extent installed in or solely servicing the Premises; and (e) the floors, ceilings and walls of the Premises. If §3.01 of this Lease permits Tenant to store or prepare food at the Premises, Tenant shall scrub, wash and clean all equipment, vents and cooking areas in the Premises on a daily basis and according to the highest standards of hygiene and cleanliness, and all tables in customer seating areas (if any) shall be wiped and cleaned on an hourly basis. All floors of the Premises shall be mopped or vacuumed (as appropriate) on a daily basis, and all garbage and refuse shall be sealed in airtight containers and removed at least twice each day to trash collection containers designated by Landlord. In addition, Tenant shall make any such reasonable changes in the operation of its business at the Premises as are requested by Landlord in an effort to improve the attractiveness of the Premises or otherwise to improve the conditions of health and hygiene therein. Tenant shall, at its own expense, enter into a service contract with a contractor approved by Landlord providing for regularly scheduled maintenance and servicing of all heating, ventilation and air conditioning systems and equipment ("HVAC") within or serving the Premises. Such contract shall include all services suggested by the equipment manufacturer and shall become effective within thirty (30) days after the Commencement Date. Notwithstanding the foregoing, Landlord may, at its option, maintain the HVAC serving the Premises, together with the HVAC serving other tenant spaces at the Retail Center, through a combined service contract, in which event the cost of such service contract shall be one of the Common Area Expenses and shared by all of the tenants whose HVAC is serviced in this manner. Tenant shall notify Landlord promptly of any and all defects and damages Landlord is required to correct or repair under §6.02 hereof.

§6.02 Maintenance by Landlord. The Landlord shall, within thirty (30) days (or such longer period of time as may reasonably be required by Landlord) after written notice from Tenant with respect thereto, maintain in good condition and repair, subject to normal wear and tear (a) the roof, the structural portions and the exterior of the Building; and (b) all Common Areas. All costs and expenses incurred by Landlord under this Section shall be Common Area Expenses. However, if such maintenance or repair results from any act or neglect of Tenant, its agents, employees or contractors, then (a) the costs and expenses thereof shall not be Common Area Expenses; and (b) Tenant shall, upon demand, reimburse Landlord for one hundred fifteen percent (115%) of such costs and expenses [such costs to include Landlord's out-of-pocket expenses and the compensation of Landlord's employees, and with the additional fifteen percent (15%) being intended to compensate Landlord for its overhead in relation thereto].

§6.03 Interruption. Landlord shall have no liability to Tenant on account of any failure, modification or interruption of electricity, water or other utility, HVAC or other service, and Tenant shall not be entitled to any abatement or diminution of Rent on account thereof. However, if such interruption occurs, Landlord shall take reasonable steps to provide for the resumption of such service to the extent the same is part of Landlord's responsibility hereunder and within Landlord's control.

21

## ARTICLE VII - RIGHT OF ENTRY

Landlord and its agents and contractors shall be entitled to enter the Premises at any time (a) to inspect the Premises; (b) to exhibit the Premises to any existing or prospective purchaser, tenant or Mortgagee; (c) to make any alteration, improvement or repair to the Building or the Premises; or (d) for any other purpose relating to the operation or maintenance of the Retail Center. Landlord shall (a) give Tenant at least twenty-four (24) hours' prior notice of its intention to enter the Premises (unless doing so is impractical or unreasonable because of emergency), and (b) use reasonable efforts to avoid interfering with Tenant's use and enjoyment thereof.

## ARTICLE VIII – CASUALTIES

§8.01  General. If the Premises are damaged by fire or other casualty during the Term, then the following shall apply:

(a)  Landlord shall restore the Premises with reasonable promptness, taking into account the time required by Landlord to effect a settlement with, and to procure any insurance proceeds from, any insurer against such casualty, to substantially the same condition as existed immediately before such casualty. Landlord may temporarily enter and possess any or all of the Premises for such purpose. Landlord shall not be obligated to repair or restore any fixture, improvement, alteration, furniture or other property owned or installed by Tenant, except alterations or improvements for which insurance proceeds are specifically made available under policies obtained hereunder.

(b)  The times for commencement and completion of any such restoration shall be extended for the period of any delay due to Force Majeure. If Landlord undertakes to restore the Premises and such restoration is not substantially completed within two hundred forty (240) days plus the period of any extension for Force Majeure as aforesaid, then Tenant may terminate this Lease by giving written notice thereof to Landlord within thirty (30) days thereafter.

(c)  From the time of such fire or other casualty to substantial completion of the restoration, Tenant's rental obligations shall be abated proportionately for that portion of the Premises which is rendered untenantable as a result of the casualty.

§8.02  Substantial Destruction. Notwithstanding §8.01 hereof, the following shall apply:

(a)  Landlord may terminate this Lease, by giving written notice thereof to Tenant within sixty (60) days after the fire or other casualty, if the Building is so damaged thereby that (1) either the Premises or the Building is rendered substantially unfit for occupancy, as reasonably determined by Landlord, (2) the Building is damaged to the extent that Landlord elects to demolish the Building, or (3) any Mortgagee requires that any or all of the insurance proceeds issued on account of such damage be used to retire any or all of the debt secured by its Mortgage.

(b)  If Landlord terminates this Lease under ¶(a) of this Section, then (1) Tenant

22

shall pay to Landlord the Minimum Rent and any Additional Rent payable by Tenant hereunder through the date of the fire or other casualty, (2) Landlord shall repay to Tenant any and all prepaid Rent for periods after such fire or other casualty, and (3) Landlord may enter upon and repossess the Premises without further notice.

§8.03  Tenant's Negligence.  Also notwithstanding §8.01 hereof, but subject to §4.03 hereof, if any such damage to the Premises, the Building or the Retail Center is caused by or results from the negligent or intentional act or omission of Tenant or any of its employees, contractors, agents, invitees or licensees, then (a) the Rent shall not be abated or apportioned as aforesaid; and (b) Tenant shall pay to Landlord, upon demand and as Additional Rent, the cost of (1) any repairs and restoration made or to be made as a result of such damage, or (2) if Landlord elects not to restore the Premises, the Building, or the Retail Center, as the case may be, all damages and losses that Landlord incurs as a result of such damage.

§8.04  Tenant's Rights.  In addition to Tenant's right to terminate this Lease as provided in Section 8.01(b) above, Tenant shall have the right to terminate this Lease if the Premises shall be damaged by fire or other casualty within the last Lease Year of the Term, provided (i) such fire or other casualty is not caused by the negligence or intentional act or omission of Tenant or any of its employees, contractors, agents, invitees or licensees, (ii) Tenant is not reasonably able to use fifty percent (50%) or more of the Premises due to such damage and, if such damage occurs at least six (6) months prior to the scheduled expiration of the Term, restoration of the Premises cannot take place within sixty (60) days of the fire or other casualty, and (ii) Tenant gives Landlord written notice of such termination election within twenty (20) days after the fire or other casualty.

## ARTICLE IX - CONDEMNATION

§9.01  Right to Award.  If any or all of the Premises are taken by the exercise of any power of eminent domain or are conveyed to or at the direction of any governmental entity under a threat of any such taking (a "Condemnation"), Landlord shall be entitled to collect, from the condemning authority, the entire amount of any award or consideration for such taking or conveyance, without deduction therefrom for any leasehold or other estate held by Tenant under this Lease. Landlord shall be entitled to conduct any Condemnation proceeding and any settlement connected therewith free of interference by Tenant; Tenant waives any right that it may otherwise have to participate therein. However, Tenant may seek, in a separate proceeding, a separate award on account of any damages or costs it incurs as a result of the Condemnation (e.g., Tenant's moving expenses, trade fixtures, etc.), so long as such separate award in no way diminishes any award or payment which Landlord would otherwise receive as a result of the Condemnation.

§9.02  Effect of Condemnation.  The following provisions of this Section shall apply if (a) all of the Premises are covered by a Condemnation; (b) any portion of the Premises is covered by a Condemnation and the remainder is insufficient for the reasonable operation of Tenant's business; (c) any portion of the Building is covered by a Condemnation and, in Landlord's reasonable opinion, it would be impractical to restore the remainder thereof; or (d) any portion of the Retail Center is

23

covered by a Condemnation and, in Landlord's reasonable opinion, it would be impractical to continue to operate the remainder of the Retail Center thereafter. If any of the events described in the immediately preceding sentence shall occur during the Term, then the Term shall terminate on the date possession of the property covered by such Condemnation is taken by the condemning authority, and all Rent shall be apportioned and paid to such date. If there is a Condemnation and the Term does not terminate pursuant to the foregoing provisions of this Section, then (i) the operation and effect of this Lease shall be unaffected by such Condemnation, except that the Minimum Rent shall be reduced in proportion to the square footage of floor area (if any) of the Premises taken or conveyed by reason of such Condemnation, and (ii) Landlord, at its sole cost and expense but only to the extent of the proceeds of any award received by Landlord for such Condemnation, shall restore the Premises with reasonable promptness, taking into account the time required by Landlord to effect its claim for and to receive an award for such Condemnation, as nearly a practicable to a complete unit of like quality and character as existed prior to the Condemnation, except that Landlord shall not be obligated to repair or restore any fixture, improvement or alteration owned or installed by Tenant, except any such fixtures, improvements or alterations for which Condemnation award proceeds are specifically made available to Landlord.

§9.03 Interruption. If there is a Condemnation, Landlord shall have no liability to Tenant on account of any (a) interruption of Tenant's business upon the Premises, (b) diminution of Tenant's ability to use the Premises, or (c) other injury or damage sustained by Tenant as a result of such Condemnation.

## ARTICLE X - ASSIGNMENT AND SUBLETTING

§10.01 Consent. Notwithstanding any reference in this Lease to assignees, subtenants, licensees, concessionaires, or similar persons or entities, Tenant may not assign any of its rights under this Lease or make or permit any sublease, license, mortgage, pledge or other transfer of any part of the Premises (any such assignment, sublease, etc., or attempted assignment, sublease, etc., being hereinafter referred to as a "Transfer"), without first obtaining Landlord's written consent thereto, which consent may be given or withheld by Landlord in its sole and absolute discretion. If consent to any one Transfer is given, such consent shall not extend to any subsequent Transfer. Landlord shall be entitled, in its sole and absolute discretion, to condition any such consent upon the entry by such proposed transferee into an agreement with (and in form and substance satisfactory to) Landlord, by which the proposed transferee assumes all of Tenant's obligations hereunder. Any person or entity to whom any Transfer is attempted without such consent shall have no claim, right or remedy whatsoever hereunder against Landlord. Landlord shall have no duty to recognize any person or entity claiming by, under or through any such Transfer. The foregoing terms of this Section shall apply whether or not Landlord accepts Rent from, or performance of Tenant's other obligations by, such person or entity. The sale, assignment or other transfer of a controlling interest in the ownership of Tenant (if a corporation), the sale, assignment or other transfer of any general partnership interest in Tenant (if a partnership), the sale of substantially all of Tenant's assets, and the merger of Tenant into another organization, after which merger Tenant shall not be the surviving corporation or partnership -- whether such sale, merger, etc. be by operation of law or otherwise -- shall each be

24

considered a Transfer for the purposes of this Lease.

§10.02 <u>Consent Procedure</u>. Without conferring any rights upon Tenant not otherwise provided in this Article, the parties agree that, should Tenant desire to enter into a Transfer, then, at least thirty (30) days before the proposed effective date of the Transfer, Tenant shall request Landlord's consent and provide the following: (a) the full particulars of the proposed Transfer, including its nature, effective date, terms and conditions, and copies of all offers, draft agreements, subleases, letters of commitment or intent, and other documents pertaining to the proposed Transfer; and (b) a description of the identity, net worth and previous business experience of the proposed transferee, including without limitation copies of the proposed transferee's then latest income, balance sheet and changes in financial position statements (with accompanying notes and disclosure of all material changes thereto) in audited form, if available, and certified as accurate by the proposed transferee. Tenant shall pay promptly all reasonable attorneys fees Landlord may incur in reviewing the foregoing materials and in granting or denying its consent hereunder, including those for drafting or reviewing the documents granting or denying such consent.

§10.03 <u>No Release</u>. No Transfer or other action taken with or without Landlord's consent shall in any way relieve or release Tenant from full liability for the timely performance of all of Tenant's obligations under this Lease.

§10.04 <u>Excess Rents</u>. If Tenant effects a Transfer and at any time receives periodic rent and/or other consideration which exceeds that which Tenant is obligated to pay to Landlord hereunder, Tenant shall pay to Landlord all of such excess rent or other consideration promptly [but in no event later than two (2) days] after receipt of such monies.

§10.05 <u>Blimpie Franchisees</u>. Landlord hereby acknowledges that the Guarantor (or an entity owned and controlled by the Guarantor) is an approved franchisee/licensee of Blimpie Associates, Ltd., and that the original Tenant under this Lease, 2001 B.A. Realty Inc., an affiliate of Blimpie Associates, Ltd., upon the full execution and delivery of this Lease, will sublease the entire Premises to the Guarantor (or an entity owned and controlled by the Guarantor). Landlord hereby approves such subletting of the Premises to the Guarantor. Should the original Tenant, 2001 B.A. Realty Inc., desire to replace the Guarantor, as subtenant, with another subtenant that is an approved franchisee/licensee of Blimpie Associates, Ltd., then Landlord hereby agrees that it will not unreasonably withheld its consent thereto, provided the following conditions are satisfied: (i) at least thirty (30) days prior to the effective date of the proposed subletting, Landlord shall have received the documentation referenced in Section 10.02 above, along with written evidence from Blimpie Associates, Ltd. that the proposed subtenant is an approved franchisee/licensee of Blimpie Associates, Ltd.; (ii) the proposed subtenant has a net worth equal to or greater than the Guarantor or the then most recent subtenant, as the case may be; and (iii) the proposed subtenant executes and delivers to Landlord its guaranty of this Lease, in the form of the Guaranty, which shall be secured and accompanied by Additional Collateral provided by such proposed subtenant.

ARTICLE XI - RULES AND REGULATIONS

Landlord shall have the right to impose and subsequently modify, from time to time and at its sole and absolute discretion, reasonable rules and regulations governing the use of the Retail Center ("Rules and Regulations"). Tenant shall comply with such Rules and Regulations and require its agents, employees, invitees and licensees to do so.

## ARTICLE XII - MORTGAGE LENDERS

§12.01 <u>Subordination</u>. This Lease shall be subject and subordinate to the lien, operation and effect of each Mortgage, automatically and without the necessity of any further action by either party hereto. However, if the mortgagee or beneficiary under any Mortgage (a "Mortgagee") succeeds to the interest of Landlord hereunder through foreclosure or otherwise, then, at the request of such Mortgagee, Tenant shall attorn to such Mortgagee and recognize such Mortgagee as the Landlord under this Lease, and this Lease shall continue in full force and effect as a direct lease between such Mortgagee and Tenant upon all of the terms of this Lease, except that such Mortgagee shall not be (a) liable for any act, omission or default of any prior Landlord or any other event occurring prior to such Mortgagee's succeeding to the interest of Landlord hereunder; (b) subject to any counterclaim, defense, recoupment or offset to the extent the same relates to any time prior to such Mortgagee's succeeding to the interest of Landlord hereunder; (c) bound by any payment of Rent for more than one month in advance (unless actually received as such by the Mortgagee); (d) bound by any modification or amendment of this Lease, unless such modification or amendment shall have been approved in writing by the Mortgagee or shall have been entered into and effective prior to the creation of such Mortgagee's Mortgage; (e) obligated to construct all or any portion of the Space Improvements or to grant any credit toward the cost of the Space Improvements; (f) in the event of damage to the Retail Center by fire or other casualty, obligated to repair the Premises or the Retail Center beyond such repair as may be reasonably accomplished with the net proceeds of any insurance policy therefor not applied toward the amount due under such Mortgagee's Mortgage or under any Mortgage prior in title thereto; or (g) in the event of partial condemnation, obligated to repair the Premises or the Retail Center beyond such repair as may be reasonably accomplished with the net proceeds of any award therefor not applied toward the amount due under such Mortgagee's Mortgage or under any Mortgage prior in title thereto. A "Mortgage" is a mortgage, deed of trust, ground lease or similar instrument now or hereafter granted by Landlord and encumbering all or part of the Retail Center or any renewal, modification or extension thereof. Landlord hereby agrees that it will request that any existing and/or future Mortgagee provide and enter into with Tenant, such Mortgagee's standard form non-disturbance agreement.

§12.02 <u>Written Agreement</u>. Tenant shall, within seven (7) days after request by Landlord or any Mortgagee, execute, acknowledge and deliver such further instrument as is requested by Landlord or any Mortgagee to acknowledge the rights described in §12.01 hereof and/or to provide such other information and certifications as are reasonably requested. Any Mortgagee may at any time subordinate the lien of its Mortgage to the operation and effect of this Lease without obtaining Tenant's consent thereto, in which event this Lease shall be deemed to be senior to such Mortgage without regard to their respective dates of execution, delivery and/or recordation.

26

§12.03 <u>Estoppel Certificate</u>. Tenant shall, in each instance within seven (7) days after request therefor by Landlord or any Mortgagee, execute, acknowledge and deliver to Landlord (or, at Landlord's request, to any existing or prospective purchaser, assignee or Mortgagee) a written certification (a) that this Lease is unmodified and in full force and effect (or, if there has been any modification, stating the nature of such modification); (b) as to the dates to which the Minimum Rent and Additional Rent have been paid; (c) as to the amount of any prepaid Rent or any credit due to Tenant hereunder; (d) whether Tenant has accepted possession of the Premises and all improvements thereto are as required hereunder; (e) as to the date on which the Term commenced; (f) as to whether, to the best of Tenant's knowledge, information and belief, Landlord or Tenant is then in default in performing any of its obligations hereunder (and, if so, specifying the nature of each such default); (g) as to Tenant's usage of the Premises and, without limiting the provisions of §13.01 hereof, as to the status of any Hazardous Materials thereon; and (h) as to any other fact or condition reasonably requested by Landlord or such Mortgagee. Any such certificate may be relied upon by Landlord and any such other person or entity to whom the certificate is directed.

## ARTICLE XIII - ENVIRONMENTAL COVENANTS

§13.01 <u>Prohibitions</u>. Neither Tenant nor its employees, licensees, invitees, agents or contractors shall use, manufacture, release, store or dispose of, on, under or about the Premises, any explosive, flammable substance, radioactive material, asbestos in any form, paint containing lead, materials containing urea formaldehyde, polychlorinated biphenyls, or any other hazardous, toxic or dangerous substances, wastes or materials, whether having such characteristics in fact or defined as such under laws or regulations (collectively, "Hazardous Materials"). However Tenant may store and use cleaning fluids of the type sold in supermarkets, provided that Tenant does so in a safe and lawful manner without contaminating the Premises or the environment. Without limiting the foregoing, Tenant agrees (a) to notify Landlord immediately in the event any Hazardous Materials are released or spilled on or about the Premises; (b) to monitor and clean up, immediately, any such releases and spills in compliance with all laws and governmental directions and subject to such instructions (if any) as Landlord may provide; (c) to obtain promptly such evidence or governmental approvals, that such clean-up has been completed in compliance with all laws and governmental directions, as Landlord may require; (d) to deliver to Landlord, in each instance within three (3) Business Days after Tenant's receipt thereof, copies of any and all notices received by Tenant relating to any actual or alleged contamination of the Premises; and (e) simultaneously with delivering any monitoring report or notice to any governmental agency as to any Hazardous Materials or the operation of the Premises with respect thereto, to deliver a copy thereof to Landlord.

§13.02 <u>Inspection</u>. In addition to its other rights under this Lease, Landlord may enter upon the Premises at any time for the purposes of inspecting for Hazardous Materials. If Landlord discovers the existence of any actual or potential Hazardous Materials due to fault or other act of Tenant or its agents, employees, invitees or licensees, then Tenant shall reimburse Landlord upon demand for the costs of such inspection, sampling and analysis.

§13.03 <u>Landlord's Representations and Covenants</u>. Landlord hereby represents to and covenants with Tenant that (i) as of the date of this Lease, Landlord has not received from any governmental authority any written notice that the Retail Center is in violation of any applicable environmental laws, except as may have been disclosed in writing to Tenant prior to Tenant's execution and delivery of this Lease, and (ii) the Premises will be delivered to Tenant free and clear of any and all Hazardous Materials, except in such legally permitted nominal amounts and under such conditions as may be legally permitted by applicable environmental laws in the construction of buildings.

## ARTICLE XIV - DEFAULT AND REMEDIES

§14.01 <u>Default</u>. Each of the following shall constitute an "Event of Default":

 (a) Tenant fails (1) to make one or more payments of Rent when and as due and payable hereunder, or (2) to perform or observe any one or more of its other obligations under this Lease when and as due hereunder;

 (b) Tenant or any guarantor of this Lease (1) applies for or consents to the appointment of a receiver, trustee or liquidator of Tenant or such guarantor or of all or a substantial part of the assets of Tenant or such guarantor; (2) is subject to a petition in bankruptcy or admits in writing its inability to pay its debts as they come due; (3) makes an assignment for the benefit of its creditors; (4) files a petition or an answer seeking a reorganization or an arrangement with creditors or otherwise seeks to take advantage of any insolvency law as to its own indebtedness or obligations; (5) performs any other act of bankruptcy; or (6) files an answer admitting the material allegations of a petition filed against Tenant or such guarantor in any bankruptcy, reorganization or insolvency proceeding; or

 (c) Tenant fails to take possession of the Premises when and as required under the terms hereof, Tenant fails to open for business with the public at the Premises (with all improvements to the Premises having been completed as required herein) by the Commencement Date, or Tenant thereafter vacates or abandons the Premises for more than three (3) continuous days.

§14.02 <u>Grace Period</u>. Notwithstanding anything contained in this Article, upon the occurrence of an Event of Default, Landlord shall not exercise any right or remedy which it has under any provision of this Lease or applicable law unless and until:

 (a) Landlord has given written notice thereof to Tenant, and

 (b) Tenant has failed (1) if such Event of Default consists of a failure to pay money, to pay all of such money within five (5) days after such notice; or (2) if such Event of Default consists of something other than a failure to pay money, to fully cure such Event of Default within fifteen (15) days after such notice [however, if an Event of Default of the type described in

28

this clause (2) cannot be cured within that fifteen (15)-day period, to fully cure the same within such longer time as is necessary provided that Tenant commences that cure within that fifteen (15)-day period and thereafter diligently and continuously pursues completing that cure].

However, no such notice shall be required, and Tenant shall be entitled to no such grace period (1) in an emergency in which Landlord acts to cure such Event of Default pursuant to ¶(b) of §14.03 hereof; (2) if the same type of Event of Default occurs more than twice during any twelve (12) month period; (3) if Tenant closes its business to the public during the hours Tenant is required to remain open under §3.01 hereof; or (4) in the case of any Event of Default of the type described in ¶(b) of §14.01 hereof.

§14.03 <u>Remedies</u>. Upon the occurrence of any Event of Default, Landlord may, subject to §14.02 hereof, take any or all of the following actions:

(a) Sell at public or private sale all or any part of the fixtures, equipment, inventory and other property belonging to Tenant and in which Tenant has granted a lien to Landlord under §14.05 hereof, at which sale Landlord shall have the right to become the purchaser upon being the highest bidder. The rights of Landlord set forth in the immediately preceding sentence shall be subject and subordinate to the lien rights and interest of any lender making a U.S. Small Business Administration guaranteed loan to Tenant. The proceeds of any such sale by Landlord shall be applied first toward the payment of all costs and expenses of seizing and storing such property and conducting the sale (including all reasonable attorneys' fees); second toward the payment of any indebtedness, including without limitation Rent, which may be, or may thereafter become, due from Tenant to Landlord; and third to pay Tenant any surplus remaining.

(b) Perform, on behalf of and at the expense of Tenant, any obligation of Tenant under this Lease which Tenant has failed to perform, without prior notice to Tenant, in which event one hundred fifteen percent (115%) of the total cost incurred by Landlord in doing so [the additional fifteen percent (15%) being intended to compensate Landlord for its overhead in relation thereto], together with interest thereon at the rate of eighteen percent (18%) per annum from the date of such expenditure, shall be deemed Additional Rent and shall be payable by Tenant to Landlord upon demand.

(c) With or without (at Landlord's discretion) terminating this Lease, re-enter the Premises, with or without court action or summary proceedings, remove Tenant and all other persons and property from the Premises, and store any such property in a public warehouse or elsewhere at the costs of and for the account of Tenant, all without resort to legal process and without Landlord being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby and without relieving Tenant of any liability.

(d) With or without (at Landlord's discretion) terminating this Lease, make, from time to time, such improvements, alterations and repairs as may be necessary in order to relet the Premises, and relet the Premises or any part thereof upon such term or terms (which may be for a term extending beyond the Term of this Lease), at such rental or rentals, and upon such other terms

29

and conditions (which may include concessions, free rent and/or improvements) as Landlord, in its sole and absolute discretion, deems appropriate. Upon each such reletting, all rentals received by Landlord shall be applied first toward the payment of any indebtedness other than Rent due hereunder from Tenant to Landlord, second toward the payment of all costs and expenses of such reletting (including but not limited to brokerage fees, reasonable attorneys' fees and costs of improvements, alterations and repairs), third toward the payment of all Rent due and unpaid hereunder, and the balance (if any) shall be held by Landlord and applied in payment of future Rent as the same may become due and payable hereunder.

   (e) Exercise any other rights or remedies that Landlord may have at law or in equity.

No reentry or taking possession of the Premises by Landlord shall be construed as an election on its part to terminate this Lease unless Landlord gives a written notice of such intention to Tenant. Notwithstanding that Landlord may have re-leased the Premises without termination, Landlord may at anytime thereafter elect to terminate this Lease for any previous default. Landlord shall not be liable for, nor shall Tenant's obligations hereunder be diminished by reason of, any failure of Landlord to relet the Premises or to collect rent or other amounts due in connection with such reletting. No action taken by Landlord under the terms of this Section shall operate as a waiver of any right that Landlord would otherwise have against Tenant for the Rent hereby reserved or otherwise, and Tenant shall at all times remain responsible to Landlord for any loss and/or damage suffered by Landlord by reason of any Event of Default.

  §14.04 <u>Damages</u>. Upon any Event of Default, Tenant shall remain liable to Landlord for the following amounts: (a) all Rent that may have become due with respect to the portion of the Term that has already expired; (b) all Rent that shall become due during the remainder of the Term; (c) all costs, fees and expenses incurred by Landlord in leasing the Premises to others from time to time, including but not limited to leasing commissions, construction and other build-out costs, design and permitting costs and the like; and (d) all costs, fees and expenses incurred by Landlord in pursuit of its remedies hereunder, including but not limited to reasonable attorneys' fees and court costs. Furthermore, at Landlord's option, Tenant shall be obligated to pay, in lieu of the amount described in clause (b) above in this Section, an amount (the "Substitute Amount") which is equal to the present value of all Rent that would become due during the remainder of the Term (calculating Additional Rent as though the same were to continue to increase over such remainder of the Term at the average rate of increase occurring over the then-expired portion of the Term), with such present value to be determined by discounting at an annual rate of interest which is equal to the interest paid on U.S. Treasury Notes issued at the time the calculation is made and with a one-year maturity. All such amounts shall be due and payable immediately upon demand by Landlord and shall bear interest at the rate of eighteen percent (18%) per annum from the date of such demand until paid. Provided that the Substitute Amount is actually paid in full to Landlord and the Premises are surrendered by Tenant, Landlord shall list the Premises with its broker as available for lease (to the extent Landlord's contract with such broker does not already apply to all vacant space in the Retail Center), and Tenant shall receive a reduction and reimbursement of all such amounts which is equal to the amount of any rent actually received from others to whom the Premises are rented during the re-

30

mainder of the Term; however, in its leasing efforts, Landlord may give preference to leasing other available space in the Retail Center rather than the Premises. Tenant and Landlord acknowledge and agree that payment to Landlord of the Substitute Amount, together with the corresponding reduction by reimbursement to Tenant of any rent paid by substitute tenants, are a reasonable forecast of the actual damages that would be suffered by Landlord in case of an Event of Default by Tenant, which actual damages are otherwise difficult or impossible to ascertain, and therefore such payment and reimbursement together constitute liquidated damages and not a penalty. Any suit or action brought by Landlord to collect any such liquidated damages shall not in any manner prejudice any other rights or remedies of Landlord hereunder.

Notwithstanding the foregoing to the contrary, so long as 2001 B.A. Realty Inc. is the Tenant under this Lease, **and** so long as Landlord then holds a valid and enforceable Guaranty from a subtenant approved by Landlord, which Guaranty is then secured by Additional Collateral held by Landlord, Landlord hereby agrees that it will look only to the Security Deposit hereunder, such subtenant, the Guaranty and the Additional Collateral to satisfy the monetary obligations of the Tenant under this Lease; it being expressly understood and agreed, however, that should 2001 B.A. Realty Inc. and/or Blimpie Associates, Ltd. occupy and operate the Premises at any time during the Term of this Lease, then and in any such event, 2001 B.A. Realty Inc. and/or Blimpie Associates, Ltd., as the case may be, shall be liable for any and all monetary obligations of the Tenant under this Lease that accrue during each and every period of its or their (as the case may be) occupation and operation of the Premises.

§14.05 <u>Landlord's Lien</u>. Tenant hereby grants to Landlord a first contract lien and security interest in and to all fixtures, equipment, inventory and other property that may be placed in the Premises or affixed or attached thereto and also upon all proceeds of any insurance that may be issued on account of damage to any such property. All exemption laws are hereby waived in favor of said lien and security interest benefitting Landlord. This lien and security interest is given in addition to any statutory lien benefitting Landlord and shall be cumulative thereto or alternative thereto as elected by Landlord at any time. If requested by Landlord, Tenant shall execute, deliver to Landlord and/or file at Tenant's expense, in all of the appropriate public records, Uniform Commercial Code financing statements in sufficient form to perfect the security interest hereby given. Landlord shall have, in addition to all of its rights under this Lease, all of the rights and remedies of a secured party under the Uniform Commercial Code of the jurisdiction in which the Premises are located. Landlord hereby agrees that the foregoing lien shall be subject and subordinate to the lien of any bona fide lender making a U.S. Small Business Administration guaranteed loan to Tenant for the purchase of any of the aforesaid fixtures, equipment, inventory or other personal property.

§14.06 <u>Waiver of Jury Trial</u>. Landlord and Tenant and any guarantors each hereby releases and waives any and all rights provided by law to a trial by jury in any court or other legal proceeding to enforce the terms of this Lease or with respect to any and all claims among them <u>inter se</u> that are otherwise connected with this Lease.

§14.07 <u>Waiver of Exemptions and Right of Redemption</u>. If and to the extent permitted by

31

law, Tenant waives the benefit of any and all homestead and other exemptions, redemption or restoration of the operation of this Lease, conferred by any present or otherwise.

§14.08 No Accord and Satisfaction. No payment by Tenant, or receipt by Landlord, of a lesser amount than the total amount of Rent due under the terms of this Lease shall be deemed to be other than a payment of a portion of the Rent due under this Lease. No endorsement or statement on or with any check or other payment, or in any letter or other instrument accompanying any check or other payment, shall be deemed an accord and satisfaction. Landlord may accept such check or other payment, despite such endorsement or statement, without prejudice to Landlord's rights to recover the balance of the Rent due and to pursue any other rights or remedies provided in this Lease or otherwise available at law or in equity.

§14.09 Waiver of Counterclaims. To the extent permitted by law, Tenant waives any and all right it may have to assert a counterclaim in any summary proceeding. The parties hereto specifically acknowledge and agree that Tenant's covenants to pay Rent or any other payments required of it hereunder are independent of all other covenants and agreements herein contained. The foregoing shall not be construed as a waiver of Tenant's rights to assert any such claim in a separate action brought by Tenant against Landlord.

§14.10 Landlord Defaults. If Landlord is in default of any of its obligations under this Lease for more than thirty (30) consecutive days, plus such additional time (if any) for delays due to Force Majeure, after written notice given to Landlord and to all Mortgagees (of which Tenant shall have been given written notice) by Tenant hereunder specifically describing such default, then, but not before, Landlord shall be deemed to be in default with respect to this Lease and Tenant shall have such rights at law or in equity to which it may be entitled, subject however to the provisions of Article XVII hereof.

§14.11 Granting of Future Security Interests. During the Term of this Lease, Tenant agrees to give written notice to Landlord of any loan in excess of $10,000 made to Tenant by an officer, director or shareholder of Tenant, or by a parent, grandparent or sibling of an officer, director or shareholder of Tenant, if such loan is secured by any personal property, inventory, or accounts receivable of Tenant. Such notice shall indicate the amount and terms of the loan, the name of the person making the loan, and the nature of any security interest provided by Tenant. Tenant shall also provide notice to Landlord of any default by Tenant on the terms of any such loan or the receipt of notice of default on such loan.

## ARTICLE XV - QUIET ENJOYMENT

Landlord covenants that, upon paying the Rent as and when due under the terms of this Lease and observing and performing all of the other terms and conditions, on Tenant's part to be observed and performed, in accordance with the terms of this Lease, Tenant may, throughout the Term but subject to the terms and conditions of this Lease, peaceably and quietly hold and enjoy the

Premises, and use the Common Areas hereunder, free from any interference by Landlord or by anyone claiming by, under or through Landlord.

## ARTICLE XVI - NOTICES

Each and every notice, demand and other communication to be provided hereunder to a party hereto shall be (a) in writing; (b) sent by personal delivery, registered or certified mail through the United States Postal Service with first class postage prepaid, or recognized overnight commercial courier (such as Federal Express); and (c) addressed to that party at its respective Notice Address set forth on the Reference Pages. However, notwithstanding §19.02 hereof, Landlord may change its Notice Address by so notifying Tenant hereunder, whereupon Landlord's new Notice Address shall apply. If Tenant sends Landlord any notice of default with respect to Landlord's obligations under this Lease, Tenant shall simultaneously send a copy thereof to each Mortgagee of whom Tenant has received actual notice.

## ARTICLE XVII - LIMITATIONS UPON LIABILITY

§17.01 Exculpation of Landlord. None of the following persons or entities shall be personally liable in any connection with this Lease, any breach of this Lease, or any act or omission connected with this Lease or otherwise connected with the Retail Center: Landlord or any director, officer, partner, shareholder, employee, representative, asset manager or agent of Landlord, or any Mortgagee. Tenant shall resort solely to the equity of Landlord in the Retail Center, as of the time Tenant notifies Landlord of the particular details of Tenant's claim, for the satisfaction of all judgments and other rights and remedies Tenant may have with respect to the foregoing. The foregoing exculpation of personal liability is absolute and without any exception or condition whatsoever.

§17.02 Exclusions from Liability. Landlord shall not be liable for any loss, damage or injury to person or property, or any interference or interruption of Tenant's use of the Premises or the rest of the Retail Center hereunder, that may be occasioned by (a) acts or omissions of other occupants of the Retail Center, their employees, agents, subtenants, licensees or concessionaires, or any visitors to, or customers of, the Retail Center; (b) water, gas, steam, wind, or the bursting, stoppage, or leaking of any pipes, sewer or water lines, or other conduits, fixtures, or equipment; (c) any repairs, alterations, maintenance or additions to the Premises or any other portion of the Retail Center; or (d) any criminal act on the part of any person or entity other than Landlord. Nor shall Tenant be entitled to any abatement or diminution of Rent on account of any event described in clause (a), (b), (c) or (d) of the immediately preceding sentence, unless in the case of clauses "(b)" and "(c)" only, the interruption or interference with Tenant's business in the Premises is material, caused solely by the gross negligence or intentional misconduct of Landlord or its employees, agents or contractors while acting within the scope of their employment with Landlord, and continues for longer than ten (10) consecutive business days, in which event Rent shall be equitably abated. Landlord makes no representation or warranty as to the number or type of other tenants in the Retail Center or that any of the other leases for premises within the Retail Center will continue

33

for any period of time. Neither this Lease nor any term hereof is contingent upon such other tenants or leases. Tenant has neither any right against Landlord, nor any right to an abatement or diminution of Rent, by reason of any act or omission by Landlord with respect to any leases for other premises within the Retail Center or by reason of any failure of Landlord to enforce any provision of said other leases or any Rules or Regulations.

§17.03 Transfers by Landlord. The term "Landlord", as used in this Lease, means any Mortgagee then in possession of the Retail Center, or, in the absence thereof, the then fee owner of the Retail Center. Landlord shall have the unrestricted right to assign or transfer this Lease or its interests hereunder to any purchaser of the Retail Center or any part thereof, to the holder(s) of Mortgages, or to any other person or entity. In the event of an assignment or transfer by a Landlord of its rights or interests under this Lease, or an assignment or transfer of the Premises, the Retail Center or the improvements included within the Retail Center, then (a) the Landlord who makes the assignment or transfer shall thereupon automatically be entirely freed and relieved of all obligations thereafter arising under this Lease, and (b) the person or entity thereby acquiring those rights and interests or the Premises, the Retail Center or the improvements shall automatically be deemed to have assumed and agreed to observe and perform all obligations of Landlord under this Lease thereafter arising.

## ARTICLE XVIII - REQUIRED LEASE AMENDMENTS

In each instance within ten (10) days after request therefor by Landlord, Tenant shall execute and deliver to Landlord any and all amendments to this Lease incorporating such modifications of, and additions to, the terms of this Lease as any Lending Institution shall require as a condition precedent to its granting of any loan or commitment in connection with any Mortgage. Notwithstanding the foregoing, Tenant shall not be required to execute any amendment that would modify the provisions of this Lease as to the amount of Minimum Rent, Real Estate Taxes, Common Area Expenses, Security Deposit, for Monthly Dues, the size of the Premises, or the duration of the Term. "Lending Institution" means any insurance company, bank, savings bank, trust company, savings and loan association, insurance company, university, pension, profit, retirement or welfare fund or trust, governmental or quasi-governmental agency or entity, real estate investment trust, or other financial or lending institution whose loans on real estate or with respect thereto are regulated by state or federal law.

## ARTICLE XIX - GENERAL PROVISIONS

§19.01 Entire Agreement. This Lease constitutes the entire agreement between the parties hereto as to the subject matter hereof and supersedes all prior written or oral negotiations, representations, warranties, statements or agreements between the parties hereto.

§19.02 Amendment. This Lease may be amended by and only by a written instrument executed and delivered by both parties hereto.

34

§19.03 Applicable Law. This Lease shall be given effect and construed by the application of the law of the jurisdiction in which the Premises are located, without reference to the choice of law rules of that jurisdiction.

§19.04 Waiver. Landlord shall not be deemed to have waived the exercise of any right which it holds hereunder unless such waiver is made expressly, specifically, and in writing. No delay or omission by Landlord in exercising any such right shall be deemed to be a waiver thereof or of its future exercise. No waiver shall be deemed to apply in any other instance or to any other right.

§19.05 Time of Essence. Each and every term of this Lease shall be construed in accordance with the principle that time is of the essence.

§19.06 Headings. The headings of the articles, sections and paragraphs of this Lease are provided herein only for convenience of reference and shall not be considered in construing their contents.

§19.07 Severability. No determination by any court, governmental body or otherwise that any term of this Lease is invalid or unenforceable in any instance shall affect the validity or enforceability of this Lease, that term in any circumstance not controlled by such determination, or any other term of this Lease. Rather, each term of this Lease shall be valid and enforceable to the fullest extent allowed by, and shall be construed wherever possible as being consistent with, applicable law.

§19.08 Successors and Assigns. Subject to the provisions of Article X hereof, this Lease shall be fully binding upon the parties hereto and each of their respective successors and assigns.

§19.09 Joint and Several Liability. Whenever two or more parties constitute Tenant, all such parties shall be jointly and severally liable for Tenant's obligations hereunder.

§19.10 Commissions. Each party hereto hereby represents and warrants to the other that, in connection with the leasing of the Premises to Tenant, the party so representing and warranting has not dealt with any real estate broker, agent or finder, except the Brokers of Record.

§19.11 Recordation. This Lease may not be recorded among the land records, or any other public records, without Landlord's prior written consent.

§19.12 Perpetuities Savings Clause. If the rule against perpetuities would invalidate this Lease or any portion hereof, or would limit the time during which this Lease shall be effective, due to a potential failure of an interest in property created herein to vest within a particular time, then, notwithstanding anything contained in this Lease to the contrary, each such interest must vest, if at all, within twenty-one (21) years from the date of this Lease. If any such interest does not vest within that period, then this Lease shall automatically terminate immediately prior to the expiration

of that twenty-one (21)-year period.

§19.13 <u>Incorporation into this Document</u>. The Reference Pages and each exhibit hereto is a part of this Lease.

§19.14 <u>Survival</u>. Notwithstanding any termination of this Lease (a) each party shall remain liable for any and all breaches, that shall have theretofore occurred, of its respective obligations under the terms of this Lease; (b) Tenant shall remain liable, under §§1.03, 4.04 and 13.01 hereof, with respect to any acts or omissions that shall have occurred at or prior to such termination; and (c) Tenant shall remain liable, under Article II hereof, for Rent related to the Term of this Lease.

§19.15 <u>Rights of Third Parties</u>. No term of this Lease shall be deemed to confer any right upon any person or entity other than (a) Landlord and Tenant, respectively; (b) subject to Article X hereof, their respective successors and assigns; and (c) Mortgagees as provided under the terms of this Lease.

§19.16 <u>Plurality and Gender</u>. Wherever appropriate herein, the singular includes the plural and the plural includes the singular. All feminine, masculine and neuter terms contained herein are used interchangeably.

§19.17 <u>Counterparts</u>. This Lease may be executed in two or more counterparts, in which event all counterparts shall constitute one and the same instrument.

§19.18 <u>Relationship of Parties</u>. Nothing contained in this Lease shall be construed to create the relationship of principal and agent, partnership, joint venture or any other relationship between the parties hereto, other than the relationship of landlord and tenant.

§19.19 <u>Effectiveness</u>. The submission of this Lease by Landlord does not constitute an offer by Landlord or other option for, or restriction of, the Premises. This Lease shall become effective and binding only if and when Landlord and Tenant each executes this Lease or counterpart copies of this Lease and delivers such a signed original hereof to the other.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, each party hereto has executed this Lease under seal on the day and year written first above.

**LANDLORD:**

H STREET COMMUNITY
DEVELOPMENT CORPORATION, INC.

By: *[signature]*
Name: William J. Barrow
Title: Executive Director

**TENANT:**

2001 B.A. REALTY INC.,
a New York corporation

By: *[signature]* [SEAL]
Name: Nicholas Lagano, Jr.
Title:   President

37

STATE OF **District of Columbia**, ~~CITY/COUNTY OF~~_____, TO WIT:

I HEREBY CERTIFY that on this **26th** day of **August**, 2002, before me, the subscriber, a Notary Public of the State and City/County aforesaid, personally appeared **William J. Barrow**, **Executive Director** of H Street Community Development Corporation, Inc., and he or she acknowledged the foregoing document to be the act and deed of said corporation.

WITNESS my hand and Notarial Seal.

My Commission Expires: Deirdre-Ann L. Smith
Notary Public, District of Columbia
My Commission Expires 11-30-2005

_Deirdre-Ann L. Smith_
Notary Public

STATE OF **New York**, CITY/COUNTY OF **New York**, TO WIT:

I HEREBY CERTIFY that on this **9th** day of **August**, 2002, before me, the subscriber, a Notary Public of the State and City/County aforesaid, personally appeared **NICHOLAS LAGANO JR.**, **PRES.** of **Zoo1 BA REALTY Inc**, and he or she acknowledged the foregoing document to be the act and deed of said corporation.

WITNESS my hand and Notarial Seal.

My Commission Expires: _____

JOEL R. SCHWEIDEL
Notary Public, State of New York
No. 31-8881180
Qualified in New York County
Commission Expires Jan. 91, 2003

Notary Public

38