GOVERNMENT
OF
THE DISTRICT OF COLUMBIA

+ + + + +

BOARD OF ZONING ADJUSTMENT

+ + + + +

PUBLIC MEETING

+ + + + +

TUESDAY

JUNE 6, 2006

+ + + + +

The Public Meeting convened in Room 220 South, 441 4th Street, N.W., Washington, D.C., 20001, pursuant to notice at 9:30 a.m., Geoffrey H. Griffis, Chairperson, presiding.

BOARD OF ZONING ADJUSTMENT MEMBERS PRESENT:

GEOFFREY H. GRIFFIS    Chairperson
RUTHANNE G. MILLER     Vice-Chairperson
CURTIS ETHERLY, JR.    Board Member
JOHN MANN, II          Board Member (NCPC)

ZONING COMMISSION MEMBER PRESENT:

CAROL MITTEN           Chairperson

OFFICE OF ZONING STAFF PRESENT:

CLIFFORD MOY           Deputy Secretary
BEVERLEY BAILEY        Sr. Zoning Specialist
JOHN NYARKU            Zoning Specialist
TRACEY W. ROSE         Sr. Zoning Specialist

D.C. OFFICE OF THE ATTORNEY GENERAL:

SHERRY GLAZER, ESQ.
JACOB RITTING, ESQ.
LORI MONROE, ESQ.

OFFICE OF PLANNING STAFF PRESENT:

    STEVE COCHRAN

       The transcript constitutes the minutes from the public meeting held on June 6, 2006.

| AGENDA ITEM | PAGE |
|---|---|

CALL TO ORDER:
Geoffrey Griffis . . . . . . . . . . . . . . 4

ADVISORY NEIGHBORHOOD COMMISSION 6-A
APPEAL NO. 17439 . . . . . . . . . . . . . . 5

Vote to Deny Summary Judgment . . . . . . . . . 8

Vote to Deny Appeal . . . . . . . . . . . . . 25

LILLIAN K.H. AUDETTE REVOCABLE TRUST
APPLICATION NO. 17477 . . . . . . . . . . . . 26

Rescheduled . . . . . . . . . . . . . . . . 30

MISSIONFIRST DEVELOPMENT
APPLICATION NO. 17480 . . . . . . . . . . . . 32

Vote to Approve the Application . . . . . . . . 35

PAULINE S. NEY
APPLICATION NO. 17446 . . . . . . . . . . . . 36

Vote to Approve the Application as Amended . . . 91

WILLIAM J. McKEEVER
APPLICATION NO. 17319 . . . . . . . . . . . . 91

Vote to Approve the Modification . . . . . . . 95

SHERMAN ARMS, LLC
APPLICATION NO. 17464 . . . . . . . . . . . . 96

Vote to Approve the Application . . . . . . . 104

DC HAMPTON, LLC
APPLICATION NO. 17459 . . . . . . . . . . . 106

Vote to Approve the Application . . . . . . . 112

ADJOURN - Geoffrey Griffis . . . . . . . . . 113

1                    P-R-O-C-E-E-D-I-N-G-S

2                                    10:40 a.m.

3              CHAIRPERSON GRIFFIS: Good morning, ladies

4    and gentlemen.    Let to call to order our public

5    meeting of the 6th of June, 2006.  My name is Geoff

6    Griffis, Chairperson. Joining me today, of course, of

7    the    Vice-Chair   Ms.    Miller   and   Mr.    Etherly.

8    Representing the National Capital Planning Commission

9    is Mr. Mann.   We have differing Zoning Commissions

10   that have participated on several of the cases this

11   morning for decision.   As they are available, they

12   will come out and join us.

13              Copies  of  today's  hearing  agenda  are

14   available, of course, for you where you entered into

15   the hearing room.  You can pick that up.  We do have

16   an  awful  lot  on  our  agenda  for  the  meeting  this

17   morning so we are going to get straight into it.  We

18   will not be changing the chronology of that listed on

19   the schedule.  We'll roll through as they are printed

20   and have been published.

21              I'm just going to ask that everyone just

22   if they would turn off cell phones and any sort of

23   other noise-making devices so that our transmission of

24   our deliberation is not interrupted.  Of course, in

25   the public meeting all cases that we are going to call

1   for decision have been heard.  The records have been

2   closed.  There were filings on numerous cases that

3   were requested.  Most have come in.

4                We will make note of what has been

5   accepted into the record and what has not been

6   accepted if that is particular to each individual

7   case.  There is not an opportunity for the public

8   participation in our morning session, of course, our

9   public meeting, as visually you can probably see.  W

10  have full records before us and we will move ahead for

11  our own deliberation on these.

12                With that, let me say a very good morning

13  to Ms. Bailey, Ms. Rose, Ms. Glazer, and Mr. Moy, who

14  will be ably assisting us in numerous capacities.

15  However, at this point I think we should move straight

16  ahead to call the first case for deliberation.

17                MR.  MOY:   Yes.   Good  morning,  Mr.

18  Chairman, Members of the Board.  The first case for

19  decision making is the Appeal No. 17439 of the

20  Advisory Neighborhood Commission G-A, pursuant to 11

21  DCMR 3100 and 3101 from the administrative decision of

22  the Zoning Administrator, Department of Consumer and

23  Regulatory Affairs (DCRA) to issue Certificate of

24  Occupancy, Permit No. 102037, dated July 27, 2005,

25  authorizing a 49-seat restaurant use ("Cluck-U-

1    Chick").

2            · Appellant alleges that DCRA erred by

3    issuing the C of O for a fast food restaurant without

4    Board of Zoning Adjustment special exception review

5    under Subsection 733. The subject property is located

6    in the HS (H Street Northeast Commercial Overlay/C-2-A

7    District at premises 1123 H Street, NH.E. (Square 982,

8    Lot 823).

9            On April 25, 2006, the Board completed

10    public testimony on the appeal application, closed the

11    record, and scheduled its decision on June 6, 2006.

12    The Board requested no additional information for the

13    record.   The Board is stacked on the merits of the

14    appeal from the ANC-6A on No. 1 and No. 2.  M   r   .

15    Chairman, there is the property owner's motion for

16    judgment as a matter of law.   That's in your case

17    folders as Exhibit 26 which is dated April 25, 2006.

18            Finally, we also have a preliminary

19    matter.   The Board received after the record was

20    closed a letter from Council Member Kwame Browne dated

21    April 25, 2006, and I'll leave it at that.   That

22    completes the status briefing, Mr. Chairman.

23            CHAIRPERSON GRIFFIS:  Excellent.  Thank

24    you very much.   Let's take the first preliminary

25    matter, Board Members, that are participating on this

1    case.  We have a filing, as Mr. Moy has indicated,

2    came in after the record was closed.   It is my

3    understanding that none of us have actually seen that

4    and received it.

5              I would suggest that we not open up the

6    record as we would need to in a motion to open up the

7    entire record to accept that in but rather move ahead

8    with our record as it has been complete.  I'll take

9    any other discussion on that or any opposition to it.

10   Very well.

11             Not noting additional comments, I'll take

12   it as a consensus of the Board then to keep the record

13   closed, therefore, returning that letter.  Of course,

14   in the future we will look to receiving letters from

15   all participants and certainly counsel members and

16   hopefully we will update them on the timeliness of

17   getting those submissions in.

18             The other preliminary matter, as Mr. Moy

19   has indicated, is that we do have a motion for summary

20   judgment in this case.  I'll take a brief deliberation

21   on that but I would move that we deny the motion for

22   summary judgement on this case and ask for a second.

23             VICE-CHAIRPERSON MILLER:   Second.

24             CHAIRPERSON GRIFFIS:  Thank you very much.

25   I think it is essentially moot at this point as we are

1    about to go into a full deliberation and finish the

2    case. If not., it would be just redundant to take it

3    up in a motion.

4    We had held that in abeyance noting that

5    there was a possibility that we might entertain that

6    at some juncture as it was somewhat efficiently and

7    effectively presented. As we move through this I

8    think it was properly done in abeyance but we need to

9    dispense with that now. Others comment on the motion?

10    VICE-CHAIRPERSON MILLER: I just would add

11    that I think there are facts in dispute that are

12    pertinent to our decision and that would be another

13    reason to deny it.

14    CHAIRPERSON GRIFFIS: Excellent point.

15    Anything else? Very well. We have a motion before

16    us. I would ask for all those in favor signify by

17    saying aye.

18    ALL: Aye.

19    CHAIRPERSON    GRIFFIS:    Opposed?

20    Abstaining?

21    Mr. Moy, why don't we just record the vote

22    on that preliminary matter.

23    MR. MOY: Yes, sir. The staff would

24    record the vote as three, zero, two, the motion of the

25    Chair to deny the motion for summary judgment,

1    seconded by Ms. Miller.    Also in support of the

2    motion, Mr. Mann.  We have a Zoning Commission Member

3    not present and not voting and a Board Member who is

4    recused on this case.

5                    CHAIRPERSON GRIFFIS:  Excellent.    Thank

6    you very much.  Let's get into the substance then of

7    the Appeal No. 17439 which is, of course, for the

8    establishment and whether an error was created when

9    the issuance of a Certificate of Occupancy from the

10   Zoning Administrative.   That being, it should have

11   come    under    the    classification    of    a    fast    food

12   restaurant, of course, would then take some relief or

13   would not be allowed matter-of-right, or whether this

14   fits into the definition which was properly issued.

15                This was very clear and straightforward in

16   terms of points.  Often appeals may not be.  There may

17   be five or six differing points.  I would note that

18   the ANC who brought the appeal raises two issues, they

19   say.   I find them very similar and so close that I

20   really looked at this as a singular issue as whether

21   it  was  properly  defined  as  a  fast  food  or  as  a

22   restaurant looking at, of course, what was before the

23   Zoning Administrator at the time of which review and,

24   therefore, issuance of the Certificate of Occupancy.

25                The record, I think, is very full on that.

1    I think we are at a unique position from the Board's

2    perspective as we are the appeal/body for this clearly

3    in the appeal we will look to any of the documents

4    that would have been available to the Zoning

5    Administrator.   I think also in our capacity and as

6    part of our jurisdiction and direction we are able to

7    look beyond what was immediately available into a more

8    full evidentiary findings and hearings on this case.

9            I think we have done that.  I think there

10   is a lot of evidence that was presented in this appeal

11   that I think we found useful and I think found

12   appropriately and jurisdictionally available to us.

13   That being how it's operating currently.   There is

14   certainly no way the Zoning Administrative would have

15   been able to know how it operates today in the

16   issuance of a C of O prior to its opening.

17           Why is that prevalent?  Well, of course,

18   it's prevalent because our zoning definition really

19   hinges on how one is to operate. I'll start with the

20   very beginnings of the two elements that I think we

21   looked at, or I looked at, in terms of my deliberation

22   on this.

23           I think the ANC is in good position to be

24   protective of the difference between fast foods and

25   restaurants.  I think they were deliberate, clear, and

1   articulate in bringing their case.  But when posed for

2   our judgment on whether an error was created, I think

3   first we begin with what the Zoning Administrative

4   would have before them.  There is the filings and the

5   affidavits of how this would be programmed, designed,

6   and developed.

7           Certainly you have the plans that were

8   permitted and then you have the affidavit.  I don't

9   see anything that was persuasive in terms of the error

10  that was created by the Zoning Administrator in

11  issuing a C of O at that juncture.  As we open up even

12  further and step beyond that, still in the shoes of

13  the Zoning Administrator in looking as we venture

14  forward in time, we look at whether this establishment

15  fits into the definition of a fast food restaurant.

16          I'll pause for a moment and just say that

17  this is one of the most -- I have almost run out of

18  adjectives to describe poorly written sections in our

19  regulations but this is one that needs a heck of a lot

20  of work.  I know that we are pulling together things

21  to recommend that to be relooked at.

22          We have the difference between a fast food

23  restaurant and a restaurant.  How when one tips itself

24  into fast food there is a certain amount of usable

25  space for sitting and queuing.  Then we look at the

1    difference between how much prepared food and the

2    packaging and disposal and all these things, all very

3    functional aspects which isn't inappropriate to look

4    at it that way.  I just wonder if it is actually

5    serving the intent overall of what we are trying to

6    limit or safeguard from.

7            That being said, going directly to this

8    case, there was an awful lot of evidence that was

9    presented from photographic evidence to documentation

10   to additional plans.  As you recall, we had extensive

11   discussion about whether there was a dishwasher or not

12   and whether one was on order.  For me that was not

13   pertinent.

14           It was an interesting indication or level

15   of understanding of the operation but when shown, in

16   fact, the amount of dishes, the amount of silverware,

17   the wash sinks that, of course, that they treat all

18   that properly at the restaurant, it was shown to me

19   and it was very persuasively shown that this was, in

20   fact, falling into the definition of a restaurant and

21   not tipping into that element of the second points

22   that would have made it part of a fast food

23   restaurant.

24           That is the frame of my deliberation at

25   this point.  Let me open it up to others for further

1    discussion and then we'll move back into it.

2            MR. MANN: Mr. Chairman, could I just ask

3    a couple of questions to clarify some of what you

4    said?

5            CHAIRPERSON GRIFFIS: Absolutely.

6            MR. MANN: I'm going to reiterate a little

7    bit what I think I heard. It seems to me as we were

8    listening to the testimony in this appeal that some of

9    it seemed to go to the actual issuance of the C of O

10   and some of it seemed to be more addressing the post

11   issuance operation of the restaurant. It became a

12   little murky as to whether or not we were supposed to

13   simply be addressing all the information prior to the

14   issuance of the C of O or if we could take into

15   consideration the ongoing or current operations of the

16   restaurant. Am I right so far?

17           CHAIRPERSON GRIFFIS: Yes.

18           MR. MANN: Okay. So what I think I heard

19   you say was that it's okay in our deliberations if we

20   take into consideration the whole universe of

21   information that we heard rather than simply if we

22   were to kind of somehow be able to put in

23   chronological order every bit of information that ever

24   occurred in this application.

25           There is not a particular cutoff time or

1    what is it that allows us to consider a greater

2    universe of information prior to just the information

3    that was available to the Zoning Administrator prior

4    to the issuance of the C of O?

5         CHAIRPERSON GRIFFIS: That's an excellent

6    question.  I think, first of all, our review is

7    primarily based on the facts that were presented to

8    DCRA or the Zoning Administrator.  I think that we are

9    able to open up to see more of the evidence that is

10   currently presented based on the fact that -- well,

11   specifically in this case it's based on the fact of

12   the definition goes to use and programming and how it

13   is actually done.

14        I think there is nothing that precludes us

15   or prohibits us from looking at that evidentiary

16   information that is now available as opposed to the

17   fact that it was not available to the Zoning

18   Administrator.  What would be more difficult is if it

19   was in conflict and then we would be in a different

20   situation.   I still think we would have the

21   jurisdiction and the ability to look at that.  That it

22   isn't in confidence we don't have to step into that

23   element.  Does that address?

24        MR. MANN: It does address.  I would say

25   it certainly help make the murky a little less murky

1    because the more information we had the clearer some

2    of the aspects of the operation of this restaurant

3    became to me.

4              CHAIRPERSON GRIFFIS:  Right.  Good.  I

5    don't think it's any different than some of the other

6    appeals that we looked at.  In fact, I don't want to

7    site case or go to directly to this, but my thought is

8    that we step in the shoes of the Zoning Administrator,

9    of course, as an appeal.

10             Say  we  were  having  an  appeal  of  an

11   issuance  of  a  permit,  if  there  was  further

12   documentation  that  we  thought  necessary  in  order  to

13   make  a  judgement,  we  would  be  able  to  ask  the

14   applicant  in  this  proceeding  to  provide  that  even

15   though,  or  perhaps  the  Zoning  Administrator  didn't  at

16   that time.

17             To me this is a simple step or small step

18   in  the  same  direction  and  that  that  we  have  that

19   evidence available, or potentially available.  Let us

20   be able to have that presented to us and then both

21   sides can obviously deal with it as in the hearing.

22             Yes, Ms. Miller.

23             VICE-CHAIRPERSON MILLER:  I guess the way

24   I see it is that the first question is whether the

25   Zoning Administrator erred in issuing a Certificate of

1    Occupancy.  When we are looking at that we need to

2    look at what information was available to the Zoning

3    Administrator  or  what  information  he  should  have

4    looked at.

5                    Then  in  these  proceedings  if  more

6    information  comes  in  showing  that,  in  fact,  the

7    restaurant  was  actually  acting  as  a  fast  food

8    restaurant in violation of the C of O, I think we

9    would have the authority to make that finding and the

10   ZA would then have the direction to take enforcement

11   action.

12                   But  with  respect  to  the  first  question

13   which is the primary question I think before us, in

14   addition to what you stated about what did the ZA have

15   before him in making a decision on whether or not this

16   was  a  restaurant  or  a  fast  food  restaurant.   In

17   addition to the affidavit we also had in the evidence

18   Mr.  Parker  did  a  site  visit  and  looked  at  the

19   tableware and did not find disposable tableware so

20   things like that were also in the record, and he

21   looked at the queuing area.

22                   I  think  that  the  ANC  had  some  real

23   concerns that did get aired in the hearing and caused

24   some  concern  because  this  particular  type  of

25   establishment  is  a  chain.   What  came  out  at  the

1    hearing was the operation here was not necessarily the

2    same as that which was on college campuses and other

3    areas where, in fact, they were marketing to a

4    different audience.  In fact, they did have fast food

5    restaurants in their name in other places.

6              I think that a lot of the evidence that

7    did come in with the ANC, of course, came in after the

8    C of O was issued so that did raise the issue of

9    whether or not they would then have been violating the

10   C of O.  I think that the ANC bringing the appeal had

11   the burden of proof, though, in this case.  There are

12   a few problems under the definition.  The first as the

13   queuing prong and I think that was a little bit murky

14   and unclear in the definition.

15             Therefore, the hearing focused on the

16   following two prongs, whether or not 60 percent of the

17   food items were already prepared or packaged before

18   the customer placed an order, and whether or not the

19   food was primarily served in disposable containers and

20   disposable tableware.  We heard different evidence on

21   it but I didn't see evidence that 60 percent of the

22   food items were already prepared or that the majority

23   was in disposable tableware.  Therefore, I don't see

24   that the ZA erred in this case.

25             CHAIRPERSON GRIFFIS: Excellent.  Anything

1  else?  Other elements to be brought up?  If there else

2  for deliberation, I think we should move to action on

3  this and that would put us to a motion.  I would move

4  we deny Appeal No. 17439 of the Advisory Neighborhood

5  Commission 6-A and would ask for a second.

6            VICE-CHAIRPERSON MILLER:   Second.

7            CHAIRPERSON GRIFFIS:  Thank you very much.

8  I think we have hit the critical issues of this.  I

9  think there is an awful lot of detail that went into

10  this  in  preparation.   I do appreciate everyone

11  participating in this and putting together such good

12  detailed  factual  basis  for  our  deliberation  and

13  judgment.

14            One  of  the  pieces  that  I  looked  at

15  somewhat we have seen it before and I just want to

16  make a small note of it.  It's not really that big of

17  an issue.  The element of how one advertises reminded

18  me of you talking about this being connected to other

19  franchises or other locations and their functioning.

20  We have in numerous cases of appeals and infractions

21  presented  evidence  of  websites  or  advertising  or

22  yellow book pages and I think we have found it not to

23  be  that  persuasive  of  the  actual  zoning  elements.

24            We're speaking to those zoning elements.

25  One might call themself something in advertising which

1    is different than what it is as defined in our Zoning

2    Regulations.  Of course, we are tied to the

3    regulations and how that is implemented, reviewed,

4    whether properly applied.  The other aspect of that is

5    we had some testimony in the record regarding the

6    appropriateness of retailers and investment on H

7    Street, all very human factors with this and all very

8    important factors in terms of the city.

9         As I've said before, ours is a charge that

10   is very dry and almost distant from those elements in

11   looking at the base facts of things and so I didn't

12   find personally in my deliberation looking at the

13   overall good of H Street and how we would factor all

14   that in, but rather very close point of the issuance

15   of the C of O, is it properly done with the Zoning

16   Regulation.  I find it much more interesting to look

17   at the large picture and see how we animate our city

18   neighborhoods but that's not what we're here to day.

19        Okay.  With that then I'll open it up for

20   any last comments.  Ms. Miller.

21        VICE-CHAIRPERSON MILLER:  I just want to

22   acknowledge that there certainly was in the record

23   some photographs from the ANC and testimony about the

24   use of disposable tableware at the restaurant.  It

25   just didn't rise to the level of 60 percent and wasn't

1    sure when this happened.  Certainly that is after the

2    fact which would go to the enforcement aspect.  That

3    was then counted by the applicant with a lot of

4    evidence about the amount of regular dinnerware and

5    stuff.

6              CHAIRPERSON GRIFFIS:  Excellent.  As well

7    as takeout which is available.

8              VICE-CHAIRPERSON MILLER:  That's right.

9    They do have some takeout and they are allowed to have

10    some takeout so it was, again, a question of quantity.

11              CHAIRPERSON GRIFFIS:  Right.  It's all a

12    matter of proportionality obviously is the way the

13    definition is looked at and the difficulty, as I was

14    saying   earlier   on,   the   measuring   level   of

15    proportionality is difficult at best to ascertain or

16    may not, in fact, regulate that of which it's really

17    supposed to protect.  That goes deeper into the actual

18    definitions than this particular case.

19              MR. MANN:  Just to go to Ms. Miller's

20    point earlier about the amount of food that is

21    prepared in advance, I mean, it depends on how you

22    want to define that.  I mean, some prep work has to be

23    done in any restaurant situation.  You can take that

24    definition and twist it however you would like but I

25    think she is right in this point.  It's not like the

1  food was prepared in advance because it was

2  exclusively a fast food restaurant.

3  CHAIRPERSON GRIFFIS: Right. Good. Okay.

4  Anything else then?

5  VICE-CHAIRPERSON MILLER: I guess I also

6  want to add that I think there were certain signs

7  there that I can understand that the ANC would look

8  into whether or not this was a fast food restaurant

9  but I think a lot of evidence came out in the hearing

10  including testimony by the business owner about their

11  intent and about their supplies and their operation.

12  I think that was convincing that they were not, in

13  fact, intended to be fast food or that they were a

14  restaurant.

15  CHAIRPERSON GRIFFIS: Excellent. Anything

16  else?

17  MR. MANN: Only to reiterate what you said

18  earlier and I think the best fix would be to have the

19  Zoning Commission change the definition of fast food

20  restaurant or restaurant so that we don't continue to

21  face this problem.

22  MS. BAILEY: Right. I appreciate that.

23  That is actually an interesting place to end because

24  I think there are two reasons actually to look at

25  that. One is to clarify the language and the intent

1    of it.  Secondly, I think, quite frankly, is to update

2    it to make it a little bit more contemporary and

3    certainly to address numerous and new uses that are

4    coming into urban areas. Very well.   If there is

5    nothing further then, we do have a motion --

6              MR. MOY:  Mr. Chairman, if I may before

7    the Board votes, to note for the Board that we do have

8    an absentee ballot from Ms. Mitten and she had asked

9    that her comments be read into the record so the

10   staff's feeling is up to the Board whether you want

11   her comments read before you vote or after you vote.

12             CHAIRPERSON GRIFFIS: Let's have them now.

13             MR. MOY:  I'm sorry.  Did you say after?

14             CHAIRPERSON GRIFFIS:  No.

15             MR. MOY:  Oh, I'm sorry.   Okay.   "An

16   important distinction has been made throughout this

17   case.   The appeal before us is whether the Zoning

18   Administrator erred in issuing the C of O for the

19   subject establishment as a restaurant, not whether the

20   establishment was operating within the bounds of that

21   C of O.  The answer to the question of the validity of

22   the issuance of the C of O turns on whether the ZA was

23   justified in relying on the representations of the

24   business owner.  In this case, I believe he was.

25             If  we   accept  that  the  10  percent

1  queuing/seating measurement was met, then we only need

2  focus on the remaining test for a fast food restaurant

3  regarding the amount of food prepared in advance or

4  the extent of the use of disposable containers.  I

5  think the ZA had ample evidence to suggest that this

6  would not be a fast food restaurant.

7        I think the ANC in this case may have been

8  better served by seeking DCRA's assistance in bringing

9  the establishment into compliance with the restaurant

10  C of O rather than questioning the issuance of the C

11  of O in the first place.  There is certainly evidence

12  that suggest that at least for some period of time the

13  subject restaurant may have been out of compliance

14  with the C of O.  For instance, by greater reliance on

15  disposable containers than was intended.

16        Everyone has conducted themselves in this

17  case with the same goal in mind, to ensure that this

18  establishment   operates   for   the   good   of   the

19  neighborhood without creating adverse impacts.  I hope

20  the parties will remember they are on common ground

21  when they leave here today.  This establishment is

22  precisely what the H Street corridor needs to support

23  the revitalization efforts there."

24        CHAIRPERSON GRIFFIS:  Excellent.  Thank

25  you very much, Mr. Moy.  Very well.

1          Is there anything further?

2          VICE-CHAIRPERSON MILLER:  I just want to

3    say that I guess Ms. Mitten made a premise about if we

4    assume that the 10 percent is met, and I think we

5    don't even need to assume that because if the A & B

6    are met and if we address the disposable items and the

7    prepackaging, if we look at those factors and make a

8    finding as to those, we don't even need to make a

9    finding as to the queuing.

10          CHAIRPERSON GRIFFIS:   Um.   Interesting

11   point.  I'm not sure I agree with it 100 percent but

12   it's an interesting point to bring up.  Do you go to

13   the definition of A & B first and then back into the

14   base or do you start with the fast food restaurant

15   definition and it has to find one or other of the next

16   A & B?  I don't think we need to differentiate that.

17          I think I understand your point in terms

18   of Ms. Mitten's comments.   Perhaps there are two

19   points that we need to make clear for the record.  In

20   this deliberation no one has said persuasively that we

21   have found the 10 percent was met or not met.   We

22   haven't reached that level in our finding that we need

23   to in terms of determining the appeal.

24          The second is I don't want to leave on

25   the record that the way you read the definition is

1    from the end to the beginning rather than the

2    beginning to the end.

3          VICE-CHAIRPERSON MILLER:  I just read it

4    as an "and", to find the queuing and you find one of

5    the other two.

6          CHAIRPERSON GRIFFIS:  Right.

7          VICE-CHAIRPERSON MILLER:  Okay.  And that

8    we didn't find one of the other two so, therefore, we

9    didn't need to reach the queuing question.

10          CHAIRPERSON GRIFFIS:  But we need to be

11    definitive on it.  Okay.  Very well.  Anything

12    further?  If there is nothing further then, we do have

13    a motion before us that has been seconded.  I would

14    ask that all those in favor signify by saying aye.

15          ALL:  Aye.

16          CHAIRPERSON  GRIFFIS:    And  opposed?

17    Abstaining?

18          Mr. Moy.

19          MR. MOY:  Yes, sir.  The staff would

20    record the vote as three to zero to one on the motion

21    of the Chair, Mr. Griffis, to deny the appeal,

22    seconded by Ms. Miller.  We have a Board Member

23    recused on the case.  As I said earlier, we have an

24    absentee ballot from Ms. Mitten and her vote was to --

25    rather is to deny the appeal so that gives a final

1    vote of four to zero to one.

2              CHAIRPERSON GRIFFIS:  Excellent.  Thank

3    you very much.  Let's move ahead.

4              MR. MOY:  The next case is Application No.

5    17477 of Lillian K. H. Audette Revocable Trust,

6    pursuant to 11 DCMR 3103.2, for a variance to permit

7    the location of a parking space serving a single-

8    family dwelling in the front yard under Subsection

9    2116.2, in the R-3 District at premises 2407 27th

10   Street, N.W. (Square 1300, Lot 327).

11             On May 23, 2006, the Board completed

12   public testimony on the application, closed the record

13   except for specific post-hearing documents from the

14   applicant.  The applicant was to supply descriptive

15   narrative of photographs that was submitted at the

16   time of the hearing on May 23rd.  That filing was made

17   and is identified in your case folders as Exhibit 30.

18             In conclusion, Mr. Chairman, the Board has

19   also received a letter from the applicant dated May

20   31, 2006, requesting that the Board reopen the record

21   to receive additional pieces of evidence.  The Board

22   should take that up as a preliminary matter, Mr.

23   Chairman.

24             CHAIRPERSON GRIFFIS:  Excellent.  Thank

25   you.  Very well.  Let's move ahead then.  Mr. Moy is

114

## CERTIFICATE

This is to certify that the foregoing transcript

in the matter of:    Public Meeting


Before:                Board of Zoning Adjustment


Date:                   June 6, 2006


Place:                   Washington, D.C.



represents the full and complete proceedings of the

aforementioned matter, as reported and reduced to

typewriting.

Christina Warner

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com