## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CHANDAR RATNAM, ASHA CHANDAR,
and CHANS FOODS, INC.,

        Plaintiffs,

v.

BLIMPIE ASSOCIATES, LTD., 2001 B.A.
REALTY, INC., D.C.B.G., INC., and H
STREET COMMUNITY DEVELOPMENT
CORPORATION, INC.,

        Defendants.

CIVIL ACTION NO. 1:06-cv-00372-JR

## BLIMPIE ASSOCIATES, LTD. AND 2001 B.A. REALTY, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND CROSS-MOTION TO DISMISS FRAUDULENTLY JOINED PARTIES

Blimpie Associates, Ltd. ("Blimpie Associates") and 2001 B.A. Realty, Inc. (together, "Blimpie") file this Memorandum in Opposition to Plaintiffs' Motion for Reconsideration of Plaintiffs' Motion to Remand and in support of their Cross-Motion to Dismiss Fraudulently Joined Parties.  Plaintiffs' motion should be denied because it has not identified any new facts or law that would warrant the Court's reconsideration.  As previously addressed in Blimpie's Motion for Summary Judgment and Opposition to Plaintiffs' Motion to Remand, the individual plaintiffs' status as guarantors does not give them standing to assert any affirmative claims against any defendant and no plaintiff has or can  reasonably state a claim against any defendant under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq. ("Consumer Protection Act") because the purchase of a business franchise is not a "consumer" transaction.  Moreover, upon removal, the purported claims of the fraudulently

10051346.2

joined parties (the individual plaintiffs and H Street Community Development Corporation, Inc.) were subject to dismissal for lack of subject matter jurisdiction. Accordingly, Blimpie hereby cross moves to dismiss Chandar Ratnam, Asha Chandar and H Street Community Development Corporation, Inc. ("H Street") as parties.

I.      **Plaintiffs Do Not Articulate Any New Basis for Remand Not Previously Argued.**

Plaintiffs' motion for reconsideration should be denied because it adduces no new facts previously unavailable, no intervening changes in law and no clear error in this Court's previous decision on the earlier rejected Motion to Remand.

> Motions to reconsider "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." [Lightfoot v. District of Columbia, 355 F. Supp. 2d 414, 420 (D.D.C. 2005)], quoting Anyanwutaku v. Moore, 331 U.S. App. D.C. 379, 151 F.3d 1053, 1057 (D.C. Cir. 1998). A motion to reconsider is not an opportunity to reargue facts and theories upon which the court has already ruled, or a vehicle for presenting theories or arguments that could have been advanced earlier. See id., see also Cooper v. Dep't of Justice, No. 99-2513, 2005 U.S. Dist. LEXIS 4898, *6 (D.D.C. Mar. 22, 2005). The motion will not be granted if the "court suspects the losing party is using the motion as an instrumentality for arguing the same theory or asserting new arguments that could have been raised prior to final judgment." Lightfoot, 355 F. Supp. 2d at 421.

Clay v. District of Columbia, Civil Action No. 03-466 (SBC), 2005 U.S. Dist. LEXIS 11504, at *1-2 (D.D.C. Jun. 6, 2005). Plaintiffs' current motion contains nothing new or different from their previously-filed Motion to Remand. Indeed, the arguments, facts and theories of law are identical (albeit in a reversed order). Accordingly, plaintiffs' motion should be denied because it is nothing more than an "instrumentality for arguing the same theory" previously argued. Lightfoot, 355 F. Supp. 2d at 421.

## II.    Individual Plaintiffs Lack Standing to Assert Claims for Fraud and Negligent Misrepresentation.

Individual plaintiffs Chandar Ratnam and Asha Chandar were fraudulently joined because they lack standing to assert any claims.  Ratnam and Chandar are shareholders of Chans Foods, Inc. ("Chans Foods"). To induce Blimpie Associates and 2001 B.A. Realty, Inc. to enter into the franchise agreement and sublease dated April 28, 2004, Ratnam and Chandar signed personal guarantees of Chans Foods' obligations under these two agreements.  According to plaintiffs' Motion for Reconsideration, Ratnam and Chandar's status as individual guarantors gives them standing to assert claims of fraud and negligent misrepresentation against H Street and Blimpie.

Because each cause of action here concerns alleged breaches and misrepresentations based on the franchise agreement and sublease, to which neither Ratnam or Chandar is a party, Ratnam and Chandar lack standing to state any affirmative claim in their individual capacities against any defendant.  See Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987) (sole shareholder may not assert claims of corporation, even when facing financial loss); Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F. Supp. 127, 136 (S.D.N.Y. 1988) (shareholder cannot sue in individual capacity to assert claims of corporation); Labovitz v. Washington Times Corp., 900 F. Supp. 500, 503 (D.D.C. 1995) ("[A] shareholder may not sue as an individual if the alleged wrong is primarily against the corporation.") (applying Delaware law).  Moreover, Ratnam and Chandar's status as individual guarantors of Chans Foods' obligations does not confer standing to assert any affirmative claim.  See Labovitz, 900 F. Supp. at 505 (denying standing to individual guarantor who suffered no damage and recognizing that several courts have "rejected the assertion that a stockholder's status as a guarantor of a corporate debt gives him standing to assert an individual claim against some third party.") (international

- 4 -

quotation marks omitted) (collecting cases); <u>European Am. Bank v. Lofrese</u>, 182 A.D.2d 67, 73

(N.Y. App. Div. 1992) ("A defendant who has been sued as a guarantor or surety cannot avail

himself, in exoneration of his liability, of a cause of action to recover damages for breach of the

contract with his principal.") (citation omitted); <u>Beneficial Capital Corp. v. Richardson</u>, Civil

Action No. 92 Civ. 3785 (LLS),1995 U.S. Dist. LEXIS 7354, at *17 (S.D.N.Y. May 31, 1995)

("Thus, [plaintiff] was not a tenant but a guarantor and has no standing to sue under the lease for

any breach which occurred . . . .") (citation omitted). As these cases from the two relevant

jurisdictions establish, Ratnam and Chandar's fraud and negligent misrepresentation claims

necessarily fail because they lack standing to assert such claims.

Despite a lengthy string cite in their Motion for Reconsideration of allegedly supportive

authorities, plaintiffs identify no case that actually supports their claim of standing to assert

affirmative claims against any defendant.  (Motion to Reconsider at 4-5).  Rather, the cited cases

stand for the unremarkable proposition that an individual guarantor can **defend** against a claim

seeking to enforce a guarantee by asserting a defense of fraud or negligent misrepresentation.

<u>See</u> <u>United States v. Burgreen</u>, 591 F.2d 291, 296-98 (5th Cir. 1979) (asserting fraud as defense

and third-party claim); <u>Dobbins v. Discus Oil Co., Inc.</u>, 495 So. 2d 587, 589 (Ala. 1986)

(asserting fraud as defense to action on guaranty); <u>Helmick v. Holaday</u>, 289 P. 224 (Cal. App. Ct.

1930) (same); <u>Doerr v. Hibben, Hollweg & Co.</u>, 150 N.E. 795, 796 (Ind. App. Ct. 1926) (same);

<u>Peoples State Bank v. Hill</u>, 275 S.W. 694, 697 (Ky. App. Ct. 1925) (allowing counterclaim based

on facts unrelated to guaranty); <u>First Nat. Bank of Boston v. Bergreen</u>, 417 N.E.2d 50, 51 (Mass.

App. Ct. 1981) (asserting fraud as defense to action on guaranty); <u>Henry v. W.T. Rawleigh Co.</u>,

120 So. 188, 189 (Miss. 1929) (same); <u>General Motors Acceptance Corp. v. Kalkstein</u>, 474

N.Y.S.2d 493, 495 (N.Y. App. Div. 1984) (asserting fraud only as third-party claim and holding

that "[a]n individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation."); Northwestern Bank v. Roseman, 344 S.E.2d 120, 123 (N.C. App. Ct. 1986) (allowing fraud claim based on specialized facts and circumstances and actual damages); Security Nat'l Bank v. Sloan, 648 P.2d 861, 864 (Or. App. Ct. 1982) (asserting fraud as defense to action on guaranty); Hernandez v. Bexar County Nat. Bank of San Antonio, 710 S.W.2d 684, 688 (Tex. App. Ct. 1986) (same). Here, Ratnam and Chandar seek to use their guarantees as swords, not shields. As relevant case law and the cases cited by plaintiffs establish, no basis exists to do so.

**III.    Plaintiffs Do Not  and Cannot Reasonably State a Claim Under the DC Consumer Protection Act.**

Plaintiffs' claim under the Consumer Protection Act fails as a matter of law because the purchase and operation of a business franchise is not a "consumer" transaction.[1] Plaintiffs' claim also fails because the Consumer Protection Act does not permit claims, like the one asserted here, between merchants. Accordingly, plaintiffs' Consumer Protection Act claim must fail.

A.    The DC Consumer Protection Procedures Act.

"The [Consumer Protection Act] was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices." Williams v. Purdue Pharm. Co., 297 F. Supp. 2d 171, 174 (D.D.C. 2003) (citation omitted). Although the Consumer Protection Act was "intended to be a far-reaching consumer protection law," its scope is limited to prohibiting those acts which negatively effect "consumer goods or services." Howard v. Riggs Nat'l Bank, 432 A.2d 701, 710 (D.C. 1981). Under the Consumer Protection Act, a person may assert a

---

1 The arguments and cases cited in this section of Blimpie's memorandum are substantially the same as set forth in Blimpie's motion for summary judgment filed contemporaneously herewith.

claim "seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia . . . ."  D.C. Code § 28-3905(k)(1).  A "trade practice" is defined "as any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of **consumer** goods or services."  D.C. Code § 28-3901(a)(6) (emphasis added).  "Consumer," when used in the Consumer Protection Act as an adjective, "describes anything, without exception, which is primarily for personal, household, or family use."  D.C. Code § 28-3901(a)(2).  Accordingly, relief is available under the Consumer Protection Act for unlawful acts affecting the sale, lease or transfer of personal, household or family use goods or services.

      B.      <u>Blimpie's Failure to Tell Plaintiffs About Past Neighborhood Objection to Fast Food Restaurants Did Not Affect a *Consumer* Good or Service.</u>

Plaintiffs' claim that Blimpie violated the Consumer Protection Act by: (i) not telling plaintiffs that the location chosen for Chans Foods' franchise ("Location") was not zoned for use as a fast food restaurant; (ii) not telling plaintiffs that in 2002 there was neighborhood opposition to the use of the Location as a fast food restaurant; and (iii) representing in its UFOC and Franchise Agreement that it would perform a site analysis of the Location and not performing such an analysis or not reasonably performing such analysis.  (Complaint ¶ 56.)  This claim fails as a matter of law.  First, pursuant to its Articles of Incorporation, Chans Foods is a for-profit corporation formed for the purpose of "carrying on [] a profitable business,"  -- by definition, it cannot do anything for "personal, household or family use."  Moreover,  Chans Foods entered into the franchise agreement and sublease to enable it to conduct a Blimpie business.  Because Chans Food has not acquired a "consumer good or service," there can be no "trade practice" and therefore no violation of the Consumer Protection Act.

Numerous cases addressing claims under the Consumer Protection Act have denied relief for allegedly unlawful actions that do not affect "consumer goods or services."  For example, in Barlow v. McLeod, 666 F. Supp. 222 (D.D.C. 1986), the court rejected a Consumer Protection Act claim brought by a plaintiff who lent money to the defendant in exchange for the promise of a job.  Id. at 224.  "The Consumer Protection Act is designed to prohibit certain frauds against persons who purchase, lease, or receive goods or services that are primarily for personal, household, or family use."  Id. at 228.  Granting defendant's motion for summary judgment, the court held that "[u]nder no stretch of the imagination could the transaction in this case be considered a purchase, lease, or receipt of consumer goods."  Id.  The same is true here -- under no stretch of the imagination could the purchase of a Blimpie franchise for the purpose of selling meals to the public at a profit be considered a purchase for personal, household or family use.  Accordingly, the result here should follow the result in Barlow.[2]

The same result was reached in Clifton Terrace Associates, Ltd. v. United Technologies Corp., 728 F. Supp. 24 (D.D.C. 1990), aff'd, 929 F.2d 714 (D.C. Cir. 19901)  [hereinafter Clifton].  Clifton involved claims by the corporate owner of an apartment complex against Otis Elevator Company.  Id. at 25.  The apartment complex owner alleged that Otis violated the Consumer Protection Act by refusing to repair elevators in the complex because the complex's residents were predominately black, handicapped or elderly.  Id. at 26.  The Clifton Court dismissed the claim pursuant to Fed. R. Civ. P. 12(b)(6), recognizing that "[t]his Court has held that the legislative history of the CPPA, along with a consistent reading of its provisions,

---

2       The Barlow Court also held that plaintiff's assertion of Consumer Protection Act claim based upon an alleged unfulfilled promise of a job was so devoid of merit as to help justify imposition of Rule 11 sanctions. Barlow, 666 F. Supp. at 230 ("It is clear that the only reason these statutory claims were alleged was because they contain treble damages provisions.").

unequivocally indicates that **the CPPA was intended to protect consumers only, and not corporations**." <u>Id.</u> at 34 (emphasis added). "Since plaintiff is not a consumer within the meaning of the CPPA, its claims thereunder are properly dismissed." <u>Id.</u> Here, as in <u>Clifton</u>, Chans Foods is not a "consumer," but rather a business entity and here, as in <u>Clifton</u>, its Consumer Protection Act claim should be dismissed as a matter of law.

Several other decisions  hold that the Consumer Protection Act does not apply to non-consumer claims.  <u>See e.g.</u>, <u>Kopff v. Battaglia</u>, C.A. No. 05-798, 2006 U.S. Dist. LEXIS 13638, *46-48 (D.D.C. Mar. 29, 2006) (holding that recipients of unsolicited faxes failed to state a claim under Consumer Protection Act against third-party forwarder of faxes because "there is no consumer-merchant relationship within the meaning of the statute . . . ."); <u>Slaby v. Fairbridge</u>, 3 F. Supp. 2d 22, 27-28 (D.D.C. 1998) (dismissing claims based on defendant's rejection of plaintiff's manuscript because there was no alleged consumer-merchant relationship); <u>Mazanderan v. Independent Taxi Owners' Assoc., Inc.</u>, 700 F. Supp. 588, 591 (D.D.C. 1988) (dismissing claim by owner of taxicab based on alleged unfair gasoline purchase requirement because "the contested purchases of gasoline and supplies are made in connection with his role as an independent businessman."); <u>Howard v. Riggs Nat'l Bank</u>, 432 A.2d 701, 708-10 (D.C. 1981) (holding that an individual's negligent recommendation of a merchant was not a violation of the Consumer Protection Act because there was no consumer transaction).

     C.     <u>The Sole Case Plaintiffs Identify in Support of their Consumer Protection Act Claim Actually Supports Dismissal of their Claim.</u>

The only case plaintiffs identify in support of their Consumer Protection Act claim, <u>Adam A. Weschler & Son, Inc. v. Klank</u>, 561 A.2d 1003 (D.C. 1989) [hereinafter <u>Weschler</u>] (Motion to Reconsider at 8), actually lends further support for dismissal of their claim.  <u>Weschler</u> concerns a

claim by an auction house against a bidder who reneged on his high bid for an antique blanket chest. Id. at 1003. The bidder claimed that the auction house had misrepresented the condition of the chest and moved to dismiss the claim against him based on an alleged violation of the Consumer Protection Act. Id.

The Weschler Court focused its analysis of application of the Consumer Protection Act on whether the bidder was a "consumer" entitled to protection under the Act or a "merchant" not entitled to protection. Id. at 1004-05. Based on the absence of any facts supporting the auctioneer's claim that the bidder purchased the chest for resale or museum display, the Weschler Court held that the bidder was a "consumer" who "intended to make personal use of this antique chest." Id. at 1004. The court further held that:

> Transactions along the distribution chain that do not involve the ultimate retail customer are not "consumer transactions" that the Act seeks to reach. Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers. Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather **the nature of the purchaser** that determines the nature of the transaction.

Id. at 1005 (emphasis added).

Here, it is beyond peradventure that "the nature of the purchaser" of a Blimpie franchise is a "merchant" -- in this case, a corporate business entity which expects to make a profit on sales to consumers. Weschler, like each of the cases cited above, demonstrates that plaintiffs did not engage in a "consumer transaction" by their purchase. Rather, plaintiffs' transaction was simply a business-to-business purchase and sale. See 561 A.2d at 1005 ("[The Consumer Protection Act] is not intended to supply merchants with a private cause of action against other merchants.") (internal quotation marks and citation omitted). Accordingly, plaintiffs' status as

"merchants" precludes them from asserting a viable claim against any defendant under the Consumer Protection Act.

**IV.     Ratnam, Chandar and H Street Should be Dismissed as Fraudulently Joined Parties.**

As set forth above, plaintiff Chans Foods is the only plaintiff with standing to assert any claim against any defendant.  When Blimpie removed this action from the DC Superior Court it did not specifically move to dismiss Ratnam, Chandar and H Street as fraudulently joined parties, although where, as here, parties are fraudulently joined, they should be dismissed after adjudication of their motion to remand.  See Covington v. Indemnity Ins. Co. of N. Am., 251 F.2d 930, 934 (5th Cir. 1958) (affirming trial court's sua sponte dismissal of defendant fraudulently joined to defeat diversity jurisdiction); Lawrence Builders, Inc. v. Kolodner, 414 F. Supp. 2d 134, 138 (D.R.I. 2006) (dismissing fraudulently joined parties pursuant to Fed. R. Civ. P. 21 and inherent power of court); Cary v. Board of Governors of the Kernwood Country Club, 337 F. Supp. 2d 339, 343 (D. Mass. 2004) (same); Arno v. Cost Line, Inc., 589 F. Supp. 1576, 1580-81 (E.D.N.Y. 1984) ("I find that the joinder of Costa Line was improper here, and I therefore dismiss the complaint against it sua sponte, as permitted by Rule 21.").  Accordingly, Blimpie now cross-moves for Ratnam, Chandar and H Street's dismissal.

**V.     Conclusion**

For the foregoing reasons, defendants Blimpie Associates, Ltd. and 2001 B.A. Realty, Inc. respectfully request that the Court deny plaintiffs' Motion for Reconsideration and grant their cross-motion to dismiss Ratnam, Chandar and H Street as parties to this action.

Respectfully submitted,

**BLIMPIE ASSOCIATES, LTD. and
2001 B.A. REALTY, INC.,**
By their attorneys,


_____/s/_____
Christopher J. Wallace (Bar No. 476942)
Arthur L. Pressman (pro hac vice)
Gregg A. Rubenstein (pro hac vice)
NIXON PEABODY LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8080

Dated: July 20, 2006